Ex parte Stanley.

## Ex Parte JOSEPH C. STANLEY.

RIGHT TO SPEEDY TRIAL IN CRIMINAL CASE.  Every person held on a criminal charge has the legal right to demand a speedy and impartial trial by jury.

SPEEDY TRIAL, WHAT.  The speedy trial guaranteed every person accused of crime is a trial as soon as possible after indictment found, without depriving the prosecution of a reasonable time for preparation.

FAILURE TO PROCURE JURY GROUND FOR CONTINUANCE.  If the prosecution in a criminal case makes all reasonable efforts to impannel a jury at the first term at which the case is triable, but without success, and it does not appear that a jury could not be had at the next term, there is a good cause for a continuance on its motion for the term.

CONTINUANCE WITHOUT AFFIDAVIT.  Section 318 of the Criminal Practice Act confers upon the courts the right to continue the trial of a criminal case upon a proper showing by affidavit ; but if the fact authorizing a continuance is within the judicial knowledge of the court, such as the impossibility of impanneling a jury at the term, an affidavit is unnecessary.

HABEAS CORPUS FOR WANT OF SPEEDY TRIAL.  A prisoner charged with a grave offense will not be discharged on *habeas corpus* on the ground that all efforts to obtain a competent jury at the term at which he was properly triable failed, and that no competent jury can be obtained, until it appears that all possible means of securing a jury have failed, and a trial cannot be had within a reasonable time.

INDEFINITE POSTPONEMENT OF CRIMINAL CASE.  If it appear that a jury cannot be procured in a criminal case at the term at which it is regularly triable, an order of indefinite postponement is irregular, but it does not operate as a release of the prisoner.

BY LEWIS, J.—QUERY.  If, in a criminal case, all efforts of the prosecution to procure a jury at the term at which the case is properly triable fail, and it is clear that a jury cannot be had at the next term, and a continuance would therefore be useless, should not the prisoner be discharged ?

By BEATTY, C. J.  Where, in the case of a person charged with crime, the prosecution is unable, on account of the public prejudice against him, to procure a competent jury, and the prisoner (who alone under the statute has the right) refuses to apply for a change of venue, it is proper to keep the case pending until a jury can be had, and the prisoner cannot complain of the want of a speedy trial.

HABEAS CORPUS before the Supreme Court.

The petitioner, Joseph C. Stanley, had been indicted for the murder of David D. Caldwell, and held to answer that charge before the District Court of the Third Judicial District, Washoe County.  He was tried at the November Term, 1867, and convicted of manslaughter.  A new trial having been granted by the Court below, the State appealed to this Court, and the order granting a new trial was affirmed.  (See *ante*, p. 71.)

The cause, having been remanded, was next called for trial at the May Term, 1868, of the Court below; but the panel summoned being exhausted and no jury obtained, the cause was continued.  He then applied for a writ of *habeas corpus* before the Supreme Court, which was denied.

At the August Term, 1868, of the Third District Court, the cause was again called, the panel exhausted, and no jury obtained; whereupon the Court indefinitely postponed the case.  Upon these facts the petitioner sued out this writ and claimed his final discharge on the ground that he was denied his legal right to a speedy trial.

*R. M. Clarke*, Attorney General, for Respondent.

I.

The Court, on *habeas corpus*, is limited in its inquiry to three propositions:  1st. The existence of the process;  2d. The validity of the process;  3d. Subsequent events rendering the process inoperative.  (Hurd on Habeas Corpus, 331 to 345, and cases cited; Statutes of 1862, 100–101;  5 Indiana, 290.)

The demand of a speedy public trial could in no sense affect the existence or validity of process.  This is purely a collateral fact, to be determined by extrinsic evidence, and not the proper subject of judicial inquiry on *habeas corpus*.  No principle is better settled

than that error cannot be reviewed or corrected on *habeas corpus.*
By speedy trial is not meant an *immediate* trial, but a trial *without
unreasonable or oppressive delay.* All the circumstances of the
case must be shown to enable the Court to determine the fact.
How can they be shown on *habeas corpus?* How, especially with-
out entering upon the very questions which were acted upon and
determined by the Court below?

## II.

If the Court should find this a proper case for *habeas corpus,*
the facts will not warrant the prisoner's discharge. Upon the
showing of the petition, the State has been guilty of no *laches;*
not a term has elapsed at which the State has not been ready and
anxious to try; never creating delays, never asking for a continu-
ance, always pressing forward until the Court has declared the
body of the county exhausted, and of its own motion continued the
cause for the term.

All that the State, the prosecutor, could do to obtain a speedy
trial has been done. No expense has been spared, no effort omit-
ted. So much cannot be said of the prisoner. At no time since
his commitment has he been without the means of a speedy trial,
if in good faith desired. If in truth no jury can be had in Washoe
County, the venue may be changed upon his application. This
application he declines to make, thus himself arresting the course
of justice, and refusing to avail himself of the only means by which
the trial can be had under the law.

By LEWIS, J.

The defendant is brought before this Court upon a writ of *habeas
corpus,* and his release claimed by counsel upon the grounds: First,
that he cannot have a speedy trial in the county where he was in-
dicted, and where it is claimed he has the right to be tried, because
no competent jury can be obtained there, and no change of venue
can be had upon the motion of the prosecution; and second, that
the order made by the Court postponing the trial indefinitely, ope-
rated as a release of the prisoner, and consequently the Sheriff
has now no legal authority to hold him in custody.

That all persons held on a criminal charge have the legal right to demand a speedy and impartial trial by jury, there can at this time be no doubt. The right was guaranteed to the English people by the Great Charter; it has been confirmed in subsequent bills of right; iterated and reiterated by the Courts, and defended and protected by the representatives of the people with jealous care and resolute courage. In this country the same right is generally guaranteed by the Constitutions of the respective States, or secured by appropriate legislative enactments. That the defendant may claim this right, there is no doubt. But what is to be understood by a *speedy trial*, is the embarrassing question now to be determined. It is very clear that one arrested and accused of crime has not the right to demand a trial immediately upon the accusation or arrest being made. He must wait until a regular term of the Court having jurisdiction of the offense with which he is charged, until an indictment is found and presented, and until the prosecution has had a reasonable time to prepare for the trial. Nor does a speedy trial mean a trial immediately upon the presentation of the indictment or the arrest upon it. It simply means that the trial shall take place as soon as possible after the indictment is found, without depriving the prosecution of a reasonable time for preparation. The law is the embodiment of reason and good sense; hence, whilst it secures to every person accused of crime the right to have such charge speedily determined by a competent jury, it does not exact impossibilities, extraordinary efforts, diligence or exertion from the Courts, or the representatives of the State; nor does it contemplate that the right of a speedy trial which it guaranteed to the prisoner shall operate to deprive the State of a reasonable opportunity of fairly prosecuting criminals.

Section 582 of the Criminal Practice Act indicates what is here understood by a speedy trial. That section declares that " if a defendant, indicted for a public offense, whose trial has not been postponed upon his application, be not brought to trial at the next term of the Court at which the indictment is triable after the same is found, the Court shall order the indictment to be dismissed, unless good cause to the contrary be shown."

The prisoner here certainly cannot complain that the Court below

has not endeavored, with the utmost diligence and good faith, to give him a trial, but having failed after repeated efforts to obtain a jury, and the Judge having expressed an opinion that a jury could not be secured, the defendant considers himself entitled to be released. But it is not shown that every possible means of impanneling a jury had been exhausted, and that one could not possibly be obtained in the county. After having made all reasonable efforts to give the defendant a trial, and failing in it, I am inclined to believe that the Court below had the right to continue the cause until the next term, if at such term a trial could probably be had. This effort to give the defendant a trial was at the first term after the Court below had reacquired jurisdiction of the case by the disposition by this Court of the appeal, which had previously been taken in it. Section 318 of the Criminal Practice Act, as amended in 1867, (Laws of 1867, page 127) confers upon the Courts the right to continue the trial in a criminal case upon a proper showing by affidavit. In a case of this kind an affidavit would be entirely unnecessary, if the Judge was satisfied that a jury could not be had at that term. I see no reason why, upon his own knowledge of the fact, he could not continue the case. If, upon affidavit of the prosecution, showing cause, the Judge can continue a case for a term, why may he not do so upon his own knowledge of the fact that a trial cannot be had at that particular term ? There appears to be no reason why he may not do so. If it were clear that a jury could not be had at the next term, a continuance would be useless, and the prisoner should perhaps be discharged. But it does not follow that because there was a failure at one term of Court to obtain a jury, that one could not be secured at the next term.

It is very clear that there were many persons in the county qualified to act as jurors, whose attendance the Court was not able to secure at the last term, who, however, may be summoned for the next term. Hence, it is not by any means certain that a jury cannot be impanneled at the next term of the Court. I do not hesitate to say, that if at the next term the Court fails, after proper efforts to obtain a jury, that the defendant should be released. But it seems to me that he should not be discharged until every

effort has been exhausted to bring him to trial. That the State cannot have the case transferred to another county for trial, is evidently an omission in the law. It could not have been the intention to deprive it of that right, where a trial is rendered impossible in the proper county. A prisoner charged with a grave offense should, therefore, not be released upon the ground here taken, until all possible means of securing a jury are exhausted, and it is made perfectly certain that a trial cannot be had within a reasonable time in the proper county.

The order made by the Court below, postponing the trial, was not regular. But it follows, from what has been said, that the case could have been continued for the term. Such was, perhaps, the effect of the order made. A continuance for the term would have been more regular, and the order had better be so modified.

The prisoner is remanded to the custody of the Sheriff of Washoe County, to await the action of the District Court.

By BEATTY, C. J.

I agree with my associate, Justice Lewis, in the conclusion that the prisoner should be remanded to the custody of the Sheriff of Washoe County. I also agree with him in most of his other conclusions in this case. But I do not agree with him that the State is bound to procure a speedy trial for a prisoner who does not himself choose to take those steps necessary to procure such trial.

Where there is too much prejudice or feeling, against a person charged with crime, to get an impartial trial in the county where the crime is alleged to have been committed, all he has to do is to ask for a change of venue to another county, in order to get that speedy trial the Constitution guarantees. If in such case the prisoner refuses to ask for a change of venue, I see no other way but to keep the case pending, until by change of population, the growing up of a new generation, or the wearing out of the memory of the act, an impartial trial can be had. Establish the contrary doctrine, and all a man has to do to escape punishment is to commit a crime so open and atrocious in its character as to convince every intelligent man in the country that he is unquestionably guilty and deserving punishment, and then he must be turned loose on society to commit other and more atrocious crimes.

Treadway *v.* Wright.

The clause in the Constitution which secures a speedy trial was intended to protect the innocent and not to encourage the vicious. Theoretically jurors can be disqualified by having formed an opinion in favor of the innocence of a prisoner, as well as by having formed an opinion against him. But practically there is never any difficulty in getting a jury to try an innocent man, or one about whose innocence there is any reasonable doubt. Generally speaking, it is only where crimes have been committed under circumstances of peculiar atrocity, and the evidence is clear beyond a reasonable doubt that the community at large becomes so much excited, and the crime is so much discussed, as to induce the mass of the community to form opinions disqualifying them as jurors. The exceptions to this rule are very rare indeed. '

It would only be on well settled authority, or the clearest necessity, that I would consent to the establishment of a rule to turn loose on society the worst class of criminals, on the sole ground that their crimes were so great, that the whole community in which they were committed were of the opinion that the accused deserved punishment.