[No. 2458]

## IN THE MATTER OF THE APPLICATION OF MIKE MORIARITY FOR A WRIT OF HABEAS CORPUS.

[191 Pac. 360]

1. CRIMINAL LAW—ONE ACCUSED OF CRIME IS ENTITLED TO A SPEEDY TRIAL.

   In view of Rev. Laws, 6855, one accused of crime is entitled to a speedy trial.

2. CRIMINAL LAW—"SESSION OF COURT" AS AFFECTING RIGHT TO SPEEDY TRIAL DEFINED.

   Under Criminal Practice Act, sec. 546, providing that if a defendant whose trial has not been postponed on his application is not brought to trial at the next session of the court at which the indictment or information is triable after the same is found or filed, the court shall order the same dismissed unless for good cause to the contrary, the term "session of court," in view of the abolition of regular terms, means a sitting when the court is organized to hear and determine criminal cases, so the continuing of a criminal case at a time when no jury was drawn, etc., is not a denial of the right to speedy trial, so as to warrant the quashing of the indictment.

3. CONSTITUTIONAL LAW—STATUTE DENOUNCING SYNDICALISM NOT CLASS LEGISLATION.

   Stats. 1919, c. 22, denouncing criminal syndicalism, is not objectionable as class legislation denying equal protection; it being applicable to any person committing the acts denounced.

4. Habeas Corpus—Imperfections in Indictment Not Considered.
   On habeas corpus, imperfections in the indictment because
   it consisted of generalities and conclusions cannot be con-
   sidered, and if the indictment attempts to state an offense of
   a kind which the court assuming to proceed has jurisdiction,
   the question whether the facts charged are sufficient to state
   an offense will not be examined into.

5. Habeas Corpus—Excessiveness of Bond Not Considered Where
   Petitioner Is Unable to Furnish Any.
   Even though the action of the court in raising the bail from
   $2,500 to $5,000 violated the spirit of Const. art. 1, sec. 6, for-
   · bidding excessive bail, the matter will not be reviewed on
   habeas corpus, where it appeared petitioner was unable to
   furnish any bail whatsoever.

ORIGINAL PROCEEDING. Application of Mike Moriarity
for a writ of habeas corpus to secure release from the
custody of the sheriff of Nye County, who was holding
him under indictment. **Proceeding dismissed, and
petitioner remanded.**

*M. J. Scanlan,* for Petitioner :

There has been unnecessary delay by the prosecution
in bringing petitioner to trial. The postponement should
have been upon the application of one of the parties,
and upon affidavit. There could be no presumption that
petitioner had made application for a postponement.
Rev. Laws, 7126; State v. Dewey, 88 Pac. 881. Neither
can it be said that petitioner waived objection to the
postponement, as he was given no opportunity to object.
"If good cause therefor existed, that the prosecution
would have shown it is readily to be inferred; * *. *
and certainly it was the official duty of the county attor-
ney to show such cause as existed why this action had
not been prosecuted. No good cause existed, we must
conclusively presume." Yule v. State, 141 Pac. 570.
The affidavit of the deputy district attorney was insuf-
ficient to show good cause for the continuance on account
of the inability of his witnesses to be in attendance at
the trial. "The moving party is bound to give at least
reasonable assurance of their attendance at the time
proposed for the continuance." 9 Cyc. 182; State v.
Nelson, 36 Nev. 403.

The state has no election as to which of two persons charged with an offense shall be tried first. Rev. Laws, 7126.

In all criminal prosecutions the accused shall enjoy the right of a speedy and public trial. Rev. Laws, 6855. "If the defendant, whose trial has not been postponed upon his application, is not brought to trial at the next session of the court, * * * the court shall order the indictment or information to be dismissed." Stats. 1919, sec. 546, p. 433. As there are no "terms" under our laws, the word "session" means the time when the court is open and ready for business. Horton v. New Pass Co., 21 Nev. 184; State v. Jackman, 31 Nev. 511; 35 Cyc. 1439; Stefani v. State, 24 N. E. 254; Lepari v. State, 19 Tex. App. 431; In Re Gannon, 11 Pac. 240. A speedy trial means that "the trial shall take place as soon as possible after the indictment is found, without depriving the prosecution of a reasonable time for preparation." Ex Parte Stanley, 4 Nev. 116; Ex Parte Larkin, 11 Nev. 90; U. S. v. Fox, 3 Mont. 512. After petitioner had demanded an early trial, and without any application, waiver, or consent to a postponement, it was the duty of the state to prosecute with due diligence. Flagg v. State, 74 S. E. 562; Thornton v. State, 67 S. E. 1055.

The indictment upon which the petitioner is held does not state any offense known to the law. U. S. v. Cruikshank, 92 U. S. 569; U. S. v. Hess, 124 U. S. 483; U. S. v. Bopp, 230 Fed. 723.

An indictment must contain every substantive fact necessary to constitute the offense, and must allege the same with such fullness and precision that the defendant may know for what he is prosecuted, to enable him to prepare his defense. State v. Howard, 68 N. W. 1096; State v. Thurston, 58 Am. Dec. 695; Horton v. State, 39 L. R. A. 423; State v. Crouse, 104 Atl. 525. This is particularly true where the statute does not sufficiently define the crime and set forth all the essential elements. The use of the statutory language is not sufficient. State v. Seay, 20 Am. Dec. 66; U. S. v. Carll, 105 U. S. 612.

The criminal syndicalism statute (Stats. 1919) is unconstitutional and void, being class legislation; making an arbitrary and unreasonable distinction between those who advocate and teach crime, sabotage, violence, and unlawful methods as a means of accomplishing industrial or political reform, while it exempts those who advocate and teach the same doctrine in opposing political and industrial reforms. 14th Amendment, U. S. Const.; secs. 20, 21, art. 4, Const. Nevada; 12 C. J. 1186; State v. Holland, 96 Pac. 719.

The question of the constitutionality of the statute has been sufficiently raised. Rev. Laws, 6240. "In habeas corpus proceedings, the person in whose behalf the writ is issued may deny any of the facts set forth in the return, and may challenge matters in avoidance thereof." 21 Cyc. 321; In Re Smith, 143 Cal. 368.

"The right of a person to a writ of habeas corpus does not depend upon the legality or illegality of his original caption, but upon that of his detention." 21 Cyc. 295; Rev. Laws, 6245.

*L. B. Fowler,* Attorney-General, and *H. H. Atkinson,* District Attorney, for Respondent:

There has been no unnecessary delay by the state in bringing the case of petitioner to trial. It was understood and agreed that the trial of M. C. Sullivan should proceed that of petitioner. Having consented to the postponement, his case does not come within the province of section 7128, Revised Laws.

Discussions as to sessions and speedy trials are not germane to the question involved, for the reason that petitioner was a party to the delay. Ex Parte Stanley, 1 Nev. 116; Ex Parte Larkin, 11 Nev. 90.

The trial court has a certain discretion in the granting of continuances, and may take into account his own judicial knowledge of conditions in ordering postponements. Ex Parte Stanley, supra; Ex Parte Tranmer, 35 Nev. 78; Ex Parte Bull, 42 Cal. 199.

Petitioner's remedy for the refusal of the lower court

to grant his motion for a dismissal, on the ground that he was not being given a speedy trial, is by appeal. The writ of habeas corpus is not intended to have the force or operation of an appeal, writ of error or of certiorari, and is not designated as a substitute for either. Ex Parte Smith, 2 Nev. 338; Ex Parte Winston, 9 Nev. 71; Ex Parte Maxwell, 11 Nev. 428; Ex Parte Gafford, 25 Nev. 101; Ex Parte Bull, 42 Cal. 199; People v. Marino, 85 Cal. 515.

Petitioner sets forth nothing to show that the indictment does not state a criminal offense; he does not cite any statement in the indictment that he is unable to understand, and he cannot therefore consistently maintain that it does not state an offense. It is clearly in the language of the statute, charges the offense in the words of the statute creating it, and is therefore sufficient. People v. Logan, 1 Nev. 110; Ex Parte McDermott, 183 Pac. 437.

The act in question is not beyond the legislative power. Ex Parte McDermott, supra.

By the Court, COLEMAN, C. J.:

This is an original proceeding in habeas corpus.

It appears from the return to the writ that petitioner is held by the sheriff of Nye County under an indictment returned by the grand jury of that county.

On January 14, 1920, the petitioner and one M. C. Sullivan were separately indicted by the grand jury of Nye County for similar offenses, and on February 7, 1920, the two cases were set for trial for March 29, 1920, with the understanding that the Moriarity case should follow the Sullivan case. On April 24 the court raised the bond of petitioner from $2,500 to $5,000. Prior to March 29 the defendant Sullivan received word of the serious illness of a brother in Butte, Mont., and the court permitted him to leave the state on his own recognizance. On March 20 counsel for Sullivan (who was at that time, and now is, attorney for this petitioner) sent from Reno the following telegram to the district judge at Tonopah:

"Sullivan advises death of brother and illness of sister and requests postponement. Any time later suitable for me unless state insists on proceeding with trial of Moriarity."

In pursuance of this telegram, it was agreed that the two cases might be postponed for trial, and on March 29, counsel appearing for both defendants, the Sullivan case was set for May 12 and the Moriarity case for May 19. It also appears that on May 3 the district court of Nye County drew a panel of jurors for the trial of criminal cases to appear May 12, and that on the following day, May 4, the presiding judge of that court received a telegram from Sullivan's attorney, reading as follows:

"Reno, Nevada, May 4, 1920. Judge Averill, Tonopah, Nevada: Just received wire Sullivan subpenaed as witness in murder inquest which will probably last two or three weeks. Request postponement his case. Kindly advise me soon as convenient. M. J. Scanlan."

It also appears that on May 4 the district court of Nye County entered an order vacating the order entered the day before for the service of a panel of jurors to appear May 12, and continued the trial of the Sullivan case to September 6, 1920.

It is alleged in the petition that the petitioner has at all times since February 7 been ready and anxious for a trial of his case, has never asked for nor desired a continuance, and that he has been confined in the jail of Nye County continuously since January 14, 1920, except for the period between March 31, 1920, and April 21, 1920. It is also alleged that on May 7 counsel for petitioner was informed that the said district court had vacated the order setting petitioner's case for trial on May 19, and had indefinitely postponed the same, without informing either the petitioner or his counsel of its intention to hear or consider an application for such an order, and that immediately upon receiving notice of such an order counsel protested against such continuance and insisted upon the trial of petitioner on May 19.

The return shows that on May 19 the petitioner was brought into court, at which time his counsel called the attention of the court to the fact that it was the time previously fixed for the trial of his case. It also appears that the matter was continued by the court until the following day, May 20, when the court heard a motion interposed by the defendant to dismiss, and also an application by the state for a continuance of the case for trial, which motion to dismiss was denied and an order entered continuing the case until the next calendar. Hence these proceedings.

1, 2. That a person charged with a crime is entitled to a speedy trial no one will deny (Rev. Laws, 6855; Ex Parte Stanley, 4 Nev. 113; Ex Parte Larkin, 11 Nev. 90), but as to what constitutes a speedy trial is frequently a question of considerable difficulty to determine. Counsel for petitioner contends that our statute settles the question, so far at least as this matter is concerned, and to sustain his position our attention is directed to section 546 of our Criminal Practice Act as amended (Stats. 1919, p. 436, sec. 92), which reads as follows:

"If a defendant whose trial has not been postponed upon his application, is not brought to trial at the next session of the court at which the indictment or information is triable, after the same is found or filed, the court shall order the indictment or information to be dismissed, unless good cause to the contrary be shown."

It is asserted that there was a session of court on May 19, and, no good cause being shown as a ground for continuance, petitioner was denied a speedy trial, and hence is entitled to his discharge. As to this contention, we may say that there was no such session of court on the date mentioned as is contemplated by the section of the practice act quoted. In most of the states of the Union the law requires the holding of regular terms of court, and such was the law in Nevada for a while, but in view of the conditions existing in this state it was thought

wise to dispense with regular terms of the district court. State v. Jackman, 31 Nev. 511, 104 Pac. 13.

The term "session of the court," as used in the section quoted, does not refer to every occasion when court convenes, for, as is well known, the court may convene to hear matters which require only the consideration of the presiding judge, but the term "session of the court," in the connection in which it is used in the section quoted, necessarily alludes to a "session" when the court is organized to hear and determine criminal cases. It cannot be so organized unless a jury lawfully drawn and served is present, ready to participate and perform its function, since a trial by jury is one of the constitutional guarantees enjoyed by those charged with crime. The Supreme Court of Pennsylvania, in Clark v. Commonwealth, 29 Pa. 129, speaking of a similar statute, in which a kindred question to that here presented was involved, said:

"Now, the evident construction of this section is, that the 'term, session, or court' intended by the act is a legally constituted and competent term, session, or court. It meant that a prosecutor should not allow two such terms or sessions of the court, at each of which the defendant might be legally indicted or tried, to elapse without bringing on the prosecution. But to constitute a competent court, several things are necessary: The presence of the president judge and jurors, grand and petit, drawn, summoned, and impaneled according to law. * * * It is only after two terms, at both of which it was possible to indict and try them according to law, that they became entitled to discharge. The statute was made to restrain the malice and oppression of prosecutors, and to relieve wrongful imprisonment; not to embarrass the administration of the criminal law; not to relieve righteous imprisonment and to defeat public justice."

See, also, Commonwealth v. Brown, 11 Phila. 370.

3. It is next contended that the act under which

petitioner was indicted in unconstitutional, in that it is class legislation, and denies each person equal protection of the law. There is no merit whatever in this contention. The statute (Stats. 1919, p. 33) makes any one of certain acts a felony, and provides that "any person" who commits any of the acts mentioned shall be guilty of a felony. The statute does not aim at any class, nor does it deny to any person equal protection of the law, but it is expressly intended to reach "any person," regardless of the class to which he belongs, who commits any of the acts designated. In the very recent matter of Ex Parte McGee, 44 Nev. 23, 189 Pac. 622, we held that the test of whether or not a statute denies the equal protection of the law is whether all persons similarly situated are affected alike in respect to the privileges conferred and the liabilities imposed. The act in question does not offend against this rule.

4. The third contention, to the effect that the indictment does not charge a crime because it consists of generalities and conclusions, cannot be considered in a habeas corpus proceeding. We think the correct rule on this point is stated by the Supreme Court of California in Ex Parte Ruef, 150 Cal. 665, 89 Pac. 605, wherein it is said:

"It is claimed that the indictments fail to state a public offense. On habeas corpus the inquiry into the sufficiency of an indictment is limited. We think the true rule is that, where an indictment purports or attempts to state an offense of a kind of which the court assuming to proceed has jurisdiction, the question whether the facts charged are sufficient to constitute an offense of that kind will not be examined into on habeas corpus. Here the indictments clearly attempt to charge extortion, a crime defined by section 518, et seq., of the penal code, and within the jurisdiction of the superior court. Without expressing any opinion as to whether these indictments should be held to be good on demurrer or other direct attack, they are at least not, under the

rule stated, so defective as to permit us to hold them void in this proceeding."

This rule is sustained by an overwhelming weight of authority, as appears from a note to Ex Parte Robinson, L. R. A. 1918B, 1148.

5.   Counsel for petitioner seems to be of the impression that great wrong and oppression was wrought by the raising of the bond of petitioner from $2,500 to $5,000, and by the denial by the court on May 20 of the request to permit petitioner to go on his own recognizance.   It may be that the spirit of the provision of the constitution against excessive bail (article 1, section 6) has been outraged; but this is not an application to have the bond reduced, nor does the petition or the return justify such an order, for in the petition it is said that petitioner is unable to furnish bond in any sum.   Hence, we decline to consider the question of ordering a reduction of the bond.

It is not contended that the district court abused its discretion or in any way violated the rights of the petitioner in entering the order of May 4, vacating the order of the previous day for the service of a panel of jurors to appear May 12.

For the reasons given, it is ordered that these proceedings be dismissed and that the petitioner be remanded to the custody of the officers.