# STATE *v.* SQUIER, Et Al.

No. 3116

February 5, 1936.                         54 P. (2d) 227.

*Guy E. Baker* and *Harold M. Morse,* for Appellants:

*Gray Mashburn,* Attorney-General; *W. T. Mathews* and *Julian Thruston,* Deputy Attorneys-General; *Roger Foley,* District Attorney; and *Wm. L. Scott,* Deputy District Attorney, for the State:

## OPINION

By the Court, TABER, J.:

Roy Squier and Neil Anderson have appealed to this court from a judgment of the Eighth judicial district court, Clark County, sentencing them to terms in the state prison—Squier to not less than five nor more than ten years, and Anderson to not less than five nor more than six years. The appeal is also from an order denying them a new trial. There are fourteen assignments of error, on five of which appellants now contend that there should be a reversal: (1) Insufficiency of evidence; (2) limiting the number of peremptory challenges to four; (3) denial of a speedy trial; (4) misconduct on the part of the prosecuting attorney; (5) sentence unauthorized by law.

It is the settled law of this state that a verdict of conviction will not be set aside upon the ground of insufficiency of evidence if it is supported by any substantial evidence. We have carefully read and considered the entire record in this case, and are of the opinion that there is not merely sufficient, but ample evidence to support the verdict. The court is so clearly satisfied that the verdict was warranted and sustained

by the entire evidence in the case and that said verdict is not contrary to the evidence therein that we do not feel called upon to enter into any discussion of the testimony.

The information, after stating the time and place of the alleged offense, charges that the defendants "did, then and there, wilfully, unlawfully and feloniously, in and upon one" (we omit name), "a female, not then and there being the wife of either of said defendants, violently and feloniously make an assault and her, the said" (we omit name), "then and there, forcibly and against her will, did ravish and carnally know and accomplish with her an act of sexual intercourse."

After twelve jurors had been accepted for cause, but before any jurors were sworn to try the case and before any peremptory challenges were made, counsel for defendants, addressing the court, said: "We feel that we are entitled to eight peremptory challenges for both of these defendants." The court, after hearing respective counsel, ruled as follows: "It is the rule of the court that both defendants in this case have only four peremptory challenges." Defendants proceeded to exercise the four peremptory challenges to which they were limited by the court's ruling, but did not exercise, or attempt to exercise, a fifth or any further peremptory challenge. The record does not show, except as above stated, that the defendants, after they had exercised four peremptories, or at any other time, informed the court that they were not entirely satisfied with the jury, or that they desired or demanded that they be permitted to exercise any further peremptory challenges.

"The defendant and the state shall each be entitled to peremptory challenges as follows: 1. If the offense charged is punishable with death or by imprisonment for life, to the number of eight (8). 2. If the offense charged is other than those above mentioned, to the number of four (4)." Section 10942 N. C. L.

A person convicted of rape "shall be punished by imprisonment in the state prison for a term of not

less than five years and which may extend to life; provided, that if such crime be accompanied with acts of extreme violence and great bodily injury inflicted, the person guilty thereof shall be punished by imprisonment in the state prison for a term not less than twenty years, or he shall suffer death, if the jury by their verdict affix the death penalty." Section 10124 N. C. L.

In our opinion, the information in this case does not charge an offense which is or may be punishable with death. Aderhold v. Pace (C. C. A.), 65 F. (2d) 790; 31 C. J. 734, sec. 281; 1 Bishop's Cr. Law, sec. 601. The question to be determined, therefore, is whether the offense charged in the information "is punishable" by imprisonment for life.

So far as we have been able to learn, neither the Nevada nor California statute prescribing the number of peremptory challenges in criminal cases has at any time used the words "may be punishable," "is or may be punishable," or "which may extend to life." Said statutes have always used the words "If the offense is punishable," or "If the offense be punishable." It is the contention of appellants that an offense is punishable for life, within the meaning of section 10942 N. C. L., if the sentence may extend to life. The state takes the position that where, as in this case, the offense charged in the information is punishable by imprisonment "for a term of not less than five years and which may extend to life," it is not an offense which "is punishable" by imprisonment for life.

In People v. Clough, 59 Cal. 438, 441, the court said: "It is claimed on this appeal, that robbery is punishable for life; that the defendant was entitled to twenty peremptory challenges, and that the Court erred in its ruling. The section in question has never received a judicial interpretation, and the point is a new one. We are called upon to decide it without precedent or authority to aid us. 'If the offense charged is punishable with death or with imprisonment in the State Prison for life, the defendant is entitled to twenty peremptory challenges.' * * * We have reached the conclusion that

it is only in capital cases, or cases in which a life sentence is in terms affixed by the Legislature as the punishment of the crime, that the defendant is entitled to twenty peremptory challenges. Robbery is not such a crime. It is true that the maximum punishment is not designated by the statute, but the minimum is, and that need not be for a longer time than one year." When People v. Clough, supra, was decided, the California statute (Penal Code, sec. 1070) provided that, "if the offense charged be punishable with death, or with imprisonment in the state prison for life, the defendant is entitled to twenty and the State to ten peremptory challenges. On a trial for any other offense, the defendant is entitled to ten and the State to five peremptory challenges." Defendant, in the Clough case, was convicted of robbery, the penalty for which at that time was imprisonment in the state prison "not less than one year."

People v. Clough, supra, decided in 1881, was followed in the case of People v. Riley, 65 Cal. 107, 3 P. 413, 414, decided in 1884, wherein the court, after citing the Clough case, said, "To the ruling in that case we adhere."

In People v. Fultz, 109 Cal. 258, 259, 41 P. 1040, decided in 1895, Supreme Court Commissioner Vanclief, who wrote the opinion, after citing People v. Clough and People v. Riley, supra, went on to say: "It is urged however, that those cases should be overruled, but without assigning any reason therefor which could have been overlooked or not considered by the court in those cases; therefore I think the construction put upon section 1070 of the Penal Code in those cases should be adhered to until that section is changed by the legislature, although, were the question res integra, I would be inclined to concur with counsel for appellant."

In People v. Logan, 123 Cal. 414, 56 P. 56, decided in 1899, the court said: "It is next claimed that the defendant was entitled, under the law, to 20 peremptory challenges, and was only allowed 10. When we consider the fact that section 671 of the Penal Code gives to the court authority to sentence a defendant to imprisonment

for life upon conviction of the crime of rape, there seems much force in appellant's position. And, if the question of the construction of the statute pertaining to the number of peremptory challenges to which a defendant convicted of rape is entitled were now before us for the first time, the court might probably agree with defendant's contention. But this is not a new question, and the authorities of this state are the other way. People v. Clough, 59 Cal. 438; People v. Riley, 65 Cal. 107, 3 P. 413; People v. Fultz, 109 Cal. [258] 259, 41 P. 1040. We feel that the law had best stand as it has been heretofore announced." In the Logan Case a petition for rehearing in bank was denied.

In People v. Sullivan, 132 Cal. 93, 64 P. 90, decided in 1901, the court followed the decisions above mentioned, saying: "The construction thus given to the section was made nearly 20 years ago, and, as the legislature has not seen fit to make a change in the statute, we do not feel authorized to recede from the construction then given."

In People v. Scott, 24 Cal. App. 440, 141 P. 945, in which the defendant was convicted of rape, the action of the trial court in allowing only 10 instead of 20 peremptory challenges was upheld by the court of appeals, which expressly adhered to the rule as laid down in the earlier cases.

The same rule was followed in the case of People v. Purio, 49 Cal. App. 685, 194 P. 74, 75, decided in 1920, wherein the court said: "The action of the court in refusing to allow more than 10 peremptory challenges is claimed as error under section 1070 of the Penal Code. It is contended that, since the crime of robbery may be punished by imprisonment in the state prison for life, the defendants, by virtue of said section, were entitled to twenty of such challenges. The said provision, however, applies only to cases where no shorter sentence may be imposed. It is not applicable where the punishment, in the discretion of the court, may be less than life. It therefore does not apply to the crime of robbery wherein the statute has provided that it is punishable

by imprisonment in the state prison not less than one year. Section 213, Pen. Code. This has been decided by the Supreme Court in the following cases: People v. Clough, 59 Cal. 438; People v. Riley, 65 Cal. 107, 3 P. 413; People v. Sullivan, 132 Cal. [93] 94, 64 P. 90. In People v. Harris, 61 Cal. 136, upon which appellants rely, it appears that the defendant was charged with robbery and also prior convictions, and therefore under section 667 of the Penal Code, the information involved a charge which, if sustained by a verdict of conviction, would require the court to impose a life sentence without any discretion to reduce the term. It may be added that the recent change in the law providing for an indeterminate sentence has not affected the rule in reference to the number of peremptory challenges." And see 15 Cal. Jur. 435, 436, sec. 106.

The only case cited by appellants in connection with the question now under discussion is Kerley v. State, 89 Tex. Cr. R. 199, 230 S. W. 163, wherein the court of criminal appeals reversed a conviction for rape upon the grounds that defendants, who were entitled to fifteen peremptory challenges, were restricted to ten. It must be borne in mind, however, that the pertinent statutes in Texas read as follows: "In capital cases, both the state and defendant shall be entitled to fifteen peremptory challenges." Code Cr. Proc. Tex. 1911, art. 691. "In prosecutions for felonies not capital, the defendant and state shall each be entitled to ten peremptory challenges." Code Cr. Proc. Tex. 1911, art. 709. "Whoever shall be guilty of rape shall be punished by death or by confinement in the penitentiary for life, or for any term of years not less than five, in the discretion of the jury." Pen. Code Tex. 1911, art. 1069. "An offense for which the highest penalty is death is a capital felony." Pen. Code Tex. 1911, art. 56. The highest penalty for the offense charged in the indictment in the case at bar is life imprisonment. In Nevada it is only when the crime is accompanied with acts of extreme violence and great bodily injury inflicted that the jury may affix the death penalty. In other words, the offense charged in the

information in the instant case is not a capital felony in Nevada, and, if the statutes prescribing the number of peremptory challenges in criminal cases were the same in this state as in Texas, it is clear that defendants would not have been entitled to fifteen, but only ten, peremptory challenges.

Counsel for the state, as well as appellant's counsel, seem to be of the opinion that State v. Collins, 53 Mont. 213, 163 P. 102, 103, tends to support appellant's contention that they were entitled to eight peremptory challenges. Counsel very likely did not have before them the Montana statute prescribing the number of peremptory challenges in criminal cases. That statute is as follows: "The defendant is entitled to a peremptory challenge of jurors in the following cases, and to the number as follows: 1. If the offense charged be punishable with death, or by imprisonment for life, challenges to the number of ten. 2. If the offense be punishable with imprisonment in the state prison not less than a specified number of years, and no limit to the duration of such imprisonment is declared, to the number of eight. 3. In any other case punishable with imprisonment in the state prison, to the number of six. 4. In all other cases, to the number of four." Rev. Codes 1921, sec. 11955. It will be noted that in the Collins case the court did not hold that the defendant was entitled to the highest number of peremptory challenges. The information in the Collins case, as stated by the court, "was so framed to enable the jury or the court, upon conviction of the defendant as charged, to fix his punishment as prescribed in section 8897 of the Revised Codes." An inspection of said section of the Montana statute shows that such punishment is "imprisonment in the state prison not less than ten years." Rev. Codes 1907, sec. 8897. It would seem that State v. Collins, supra, not only fails to support the position of appellants in the case at bar, but that the Montana statute itself tends to support the California rule, inasmuch as the highest number of peremptory challenges is allowed only in cases where the punishment is death or life

imprisonment, but not where the punishment, though it may extend to life, may also be less than life.

There is another consideration which, in my opinion, tends to confirm the conclusion I have arrived at that the defendants in this case were entitled to only four peremptory challenges. Section 158 of our old crimes and punishments act (Gen. St. 1885, sec. 4704), which corresponds to section 9975 N. C. L., used the words "punishable by death or by imprisonment in the state prison for a term which may extend to life." When our new crimes and punishments act was adopted in the year 1911, this wording was changed to "punishable by death or life imprisonment." As so changed, the wording of section 9975 N. C. L. is made to correspond to that of the California statute, which, at the time of said change had for 30 years been construed in at least four decisions of that state as not including cases where the penalty, though it might extend to life, could also be for a term less than life. It is also to be observed that in making the change aforesaid, subdivision 1 of said section 9975 was made to conform to the wording of said section 10942, relating to the number of peremptory challenges in criminal cases. The fact that the old crimes and punishments act used the words "which may extend to life" indicates to me that the aforesaid change in the act of 1911 was a deliberate one.

While this court is not bound by the California decisions, I cannot overlook the fact that the rule has been settled in that state for approximately 55 years, and that in none of the decisions in that state establishing, following, or recognizing said rule has there been one dissenting opinion. While the number of peremptory challenges allowed has been changed from time to time in both Nevada and California, the fact remains that the other language of the sections specifying the number of peremptory challenges to be allowed in criminal cases has always been identical, or the same in substance. The legislature of neither state has ever seen fit to change this wording, and when, in 1911, our legislature repealed the criminal practice act of 1861 and

adopted an entirely new one, the wording of the section in question was in substance wholly preserved.

My conclusion that the defendants in this case were entitled to but four peremptory challenges does not represent my personal opinion as to what the law ought to be. I think it would be better if our statute were to allow (a) ten peremptory challenges where the offense charged is punishable with death or by imprisonment in the state prison for life, but not less than life; (b) eight peremptories where the penalty for the offense charged is imprisonment in the state prison for a term not less than a specified number of years, and which may extend to life; (c) six peremptories where the penalty for the offense charged is imprisonment in the state prison for a term not less than one year nor more than any term of years less than life; and (d) four peremptories in all other cases.

Were we to hold that defendants were entitled to eight peremptory challenges, it is very doubtful, to say the least, whether they would be entitled to a reversal in this case, for the reason that, after challenging four jurors peremptorily, they did not challenge, or offer to challenge, any other juror, nor did they take any action whatsoever indicating that the jury was not entirely acceptable to them. State v. Collins, 53 Mont. 213, 163 P. 102.

My associates are strongly inclined to disagree with the view that section 10942 N. C. L. limits the defendant in a criminal case to four peremptory challenges where the offense is that charged in the information in this case. They point out that this court is not bound by the decision in the case of People v. Clough, 59 Cal. 438; that it has lost its weight as an authority because of the fact that it was strongly intimated by the supreme court of California in People v. Fultz, 109 Cal. 258, 259, 41 P. 1040, and subsequent cases, that, if it were a new question in that state, it would hold contrary to the now recognized practice. They further give it as their recollection that while in the practice of law

in this state as well as while on the trial bench, extending back nearly 30 years, it was the general rule to allow eight peremptory challenges in a situation such as is presented in this case.

■■ It is not necessary, however, in the opinion of my associates, that we decide how many peremptory challenges defendants were entitled to, for the reason, as they state, that no peremptory challenge was sought to be exercised to more than four jurors; that there is but one way for a person on trial to show that he is prejudiced in such a situation, which is to seek to exercise his right—to exhaust his remedy; that this was not done by the general statement of counsel and court; and that it is a well-known rule in this jurisdiction that judgments are reversed only in case of prejudicial error, citing State v. Smith, 33 Nev. 438, 117 P. 19; State v. Willberg, 45 Nev. 183, 200 P. 475; State v. Behiter, 55 Nev. 236, 29 P. (2d) 1000; section 11266 N. C. L.

The court is not to be understood as deciding that the defendants in this case were entitled to eight or to four peremptory challenges; but it does decide, for reasons above set forth, that defendants waived any right they may have had to more than four such challenges.

■ Appellants claim that they were denied the right to a speedy trial in the district court. While the sixth amendment to the constitution of the United States does not apply to trials in state courts (U.S.C.A., Constitution, part 2, pp. 567, 568), and there is no provision of our state constitution expressly guaranteeing a speedy trial to a defendant in a criminal case, there is no doubt that one charged with the commission of a crime is entitled to a speedy trial. Ex Parte Stanley, 4 Nev. 113; Ex Parte Larkin, 11 Nev. 90; Ex Parte Moriarity, 44 Nev. 164, 191 P. 360; N. C. L. secs. 10654, 11193, 11194.

The date of the alleged crime was May 17, 1934. Information was filed June 9, 1934. On June 25, 1934, defendants entered pleas of not guilty, and demanded and

requested an immediate trial. On June 28, 1934, the trial court fixed July 9, 1934, as the date for the trial. On July 3, 1934, the court, of its own motion, set aside said order of June 28th and ordered the trial continued to September 17, 1934. Defendants, on July 23, 1934, filed a motion to dismiss the information, upon the ground that the court's action in so continuing the trial as aforesaid constituted a denial of their right to a speedy trial. This motion was denied on August 3, 1934. Defendants had previously and in due time demanded a speedy trial, and they excepted to the order of July 3d, continuing the trial until September 17th.

Before making the order of July 3d, the sheriff had reported to the court that arrangements could be made for taking care of the jury in an air-conditioned hotel in Las Vegas, and the court had also learned that the courtroom in the new federal building in that city could be used if desired.

The order made by the trial court on July 3d was as follows: "The Court: Heretofore on the 28th of June, 1934, the Court set for trial the said case and on that same date issued an order for a venire to be in attendance on this Court on the 9th day of July, 1934, at the hour of 9:30 A. M. for the purpose of trying said case; At the time of the setting of said case it appeared that perhaps the one case would be all that would be presented to the Court for trial during the summer months and at said time there still remained the probability that the use of the Federal Court Room could be had by the Court for the trial of the action the Federal authorities having very graciously offered the use of said building and the use of its facilities to the Court and its officers for the trial of said cause; subsequent investigation has convinced the Court that it would be without jurisdiction to conduct court within the said Federal Building, that being ex-territorial; Also, it appears that since the setting of said cause there is now pending three additional criminal cases, one of which is a murder case, and that if the Court convenes for the purpose of trying criminal cases on the 9th day of July,

1934, that it would be necessary for the Court to continue such term for a sufficient length of time to dispose of all of the pending cases; Now, at this time, taking into consideration the lack of facilities for the conducting of a Jury Term of Court in the City of Las Vegas during the months of July and the early part of August, the Court is of the opinion that it would be detrimental to the best interests of the Court and to the orderly conduct of its business to require a jury to remain in attendance upon this Court for from four to five weeks; that the Court is apprehensive that to so require the attendance of a jury and to so conduct court would probably result in illness to jurors and perhaps some heat prostrations; that the provision of the Constitution which requires that all defendants are entitled to a speedy trial is contingent on existing conditions and that if the facilities of the Court are such that they cannot expeditiously and harmoniously and safely proceed to trial that that provision of the Constitution does not require the waiving and disregard of these powers in a speedy trial; in the case of Ex Parte Moriarity, 44 Nev. 164, 191 P. 360, 361, the question is there determined; Under all the circumstances, the Court does now, at this time, of its own motion, vacate and set aside the setting of said case of The State of Nevada v. Roy Squier and Neil Anderson and for the said 9th day of July at 9:30 A. M., and continues the trial of said case until Monday, September the 17th, 1934, at the hour of ten o'clock, A. M. Further ordered that the order of the drawing and requiring the attendance of a jury panel to be in attendance upon the Court on July 9th, 1934, at the hour of 9:30 o'clock A. M. is hereby revoked and set aside and the said jurors and each of them excused from such attendance; that the Sheriff notify all such summoned jurors to that effect."

It is provided in section 8469 N. C. L. that "court shall be held in each county at least once in every six months, and as often and as long as the business of the county requires." Section 11194 N. C. L. provides that, "if a defendant, whose trial has not been postponed upon his

application, is not brought to trial at the next session of the court at which the indictment or information is triable, after the same is found or filed, the court shall order the indictment or information to be dismissed, unless good cause to the contrary be shown."

In Ex Parte Moriarity, supra, this court said that "the term 'session of the court,' in the connection in which it is used in the section quoted, necessarily alludes to a 'session' when the court is organized to hear and determine criminal cases. It connot be so organized unless a jury lawfully drawn and served is present, ready to participate and perform its function."

It is clear that the rights of the defendants in this case, under section 11194 N. C. L. were not violated. Such being the case, it cannot be said that the right of defendants to a speedy trial was denied unless the court's order of July 3d was arbitrary, willful, or oppressive. We are not willing to say that it was. The fact that the court first set the trial for July 9th indicates that it had no disposition to harass or oppress the defendants. It also shows that the anticipated hot weather was not the only reason for making the order of July 3d. We have no reason to believe that these defendants would not have been brought to trial on July 9th, had other criminal cases not arisen which, in the trial court's opinion, would have necessitated a jury session lasting four or five weeks. We are inclined to agree with counsel for appellants in their contention that, with the permission of the United States and the consent of the defendants, it would have been lawful for the district court to hold a session in the courtroom of the federal building at Las Vegas; but we are not called upon to decide that point because, if it were conceded that such a session would have been lawful, it would not change our opinion that defendants' rights to a speedy trial was not denied in this case. Furthermore, decisions in those states where the statutes fix a definite limit within which defendants must be tried to the effect that hot weather is not good cause for failing to try them within such limits are not controlling where, as in this

state, no such time limit, unless it be the six - month period above referred to, is fixed, and where, as in this case, the defendants were brought to trial less than three months after their pleas of not guilty were entered. It is undesirable that one charged with crime should be held in prison, after pleading not guilty and demanding a speedy trial, for a longer period of time than is reasonably necessary. On the other hand, a defendant cannot require of the trial court that it disregard the condition of its calendar, the pendency of other cases, public expense, and the convenience or health of judge, court officers, and jurors.

Alleged misconduct of the prosecuting attorney is assigned as error, particularly a reference in the oral argument to a first degree murder case in which the defendant Behiter was convicted and executed, and a further statement made in oral argument referring to the defendant Squier as "this tramp." The reference to the Behiter case and the court's action in disposing of it appear in the following excerpt from the record on appeal: "I am not going to reiterate and go over the same thing again, because this other Behiter when he killed a woman and these other murderers. The Court: Confine yourself to arguing this case." From the foregoing it will be seen that the court, of its own motion, promptly squelched the unwarranted outburst on the part of the deputy district attorney. We are satisfied that the defendants were not prejudiced by said improper remarks of the prosecuting attorney, and the same is true of the said appellation "this tramp." When defendants objected and excepted to the last-mentioned language, the court said: "There is no evidence in the case of this fellow becoming a tramp." Testimony showed who the defendants were, and their occupations. The jury could not have been misled or prejudiced especially in view of the court's action in sustaining their objection. The assignment of error, based upon the use by the court of the words "this fellow" in the last-quoted sentence, is without any merit.

The last assignment of error relied upon by

appellants is that the district court erred in holding that no shorter period of time than five years could lawfully be fixed by the court as the minimum term of imprisonment for the offense of which the defendants were convicted. We agree with appellants that said holding of the trial court was error. We have already quoted the statute prescribing the penalty for rape. Section 9975 N. C. L. provides in part that "every person who attempts to commit a crime, unless otherwise prescribed by statute, shall be punished as follows: 1. If the crime attempted is punishable by death or life imprisonment, the person convicted of the attempt shall be punished by imprisonment in the state prison for not more than twenty years; 2. In every other case he shall be punished by imprisonment in such manner as may be prescribed for the commission of the completed offense, for not more than half the longest term, or by a fine of not more than half the largest sum, prescribed upon conviction for the commission of the offense attempted, or by both such fine and imprisonment." The first part of section 11058 N. C. L. reads: "Whenever any person shall be convicted of any felony for which no fixed period of confinement is imposed by law and where a judgment of confinement is rendered, the court shall, in addition to any fine or forfeiture which he may impose, direct that such person be confined in the state prison for an indeterminate term limited only by the minimum and maximum term of imprisonment prescribed by law for the offense of which such person shall be convicted; and where no minimum term of imprisonment is prescribed by law, the court shall fix the minimum term in his discretion at not less than one year nor more than five years, and where no maximum term of imprisonment is prescribed by law, the court shall fix such maximum term of imprisonment."

Inasmuch as section 9975 N. C. L. does not prescribe any minimum term of imprisonment, it was the trial court's duty to fix such minimum term, in its discretion, at some definite period of time not less than one year nor more than five years, under the provisions of section

11058 N. C. L. Ex Parte Weinroth, 46 Nev. 103, 207 P. 1103. We do not hold that the district court was without power or jurisdiction to fix the minimum term at five years. The error consisted in deciding that the court could not fix any shorter term. If the record were silent, this court would presume that the trial court's action in fixing five years as the minimum represented the presiding judge's best judgment in the exercise of the discretion with which the law clothes him, but the record shows that the court, in sentencing the defendants, after quoting from sections 9975 and 10124 N. C. L. said: "Now, construing those two then that if the offense attempted had been completed the minimum would not be less than five years and the maximum life, with this section 9975, 'In every other case he shall be punished by imprisonment in such manner as may be prescribed for the commission of the completed offense, for not more than half the longest term' now, the longest term would be life, the minimum in any event five years." The court then proceeded to pronounce sentence, and defendants requested that an exception be noted, whereupon the court said: "Let the record further show that the defendants duly except to the conclusion of the Court that the minimum sentence which may be inflicted upon the defendants convicted of the crime that these defendants have been convicted of, is five years."

It is the opinion of this writer that the penalty for attempt to commit the offense charged in the information is prescribed in subdivision 2 of section 9975 N. C. L. which must be read in connection with section 11058 N. C. L. My associates, however, are definitely of the opinion that such penalty is prescribed in subdivision 1 of said section 9975 read together with said section 11058.

█ Section 11101 N. C. L. gives this court authority to modify, as well as to affirm or reverse, judgments appealed from in criminal cases. In Ex Parte Melosevich, 36 Nev. 67, 133 P. 57, 59, this court said: "Upon suggestion to the trial court, the judgment could have

been amended to conform to the law or upon appeal it would have been so modified." Counsel for the defendants in the instant case agree with the state's counsel that this court has power to modify the sentence.

In modifying the judgment in this case, we shall not disturb the maximum terms fixed by the trial court, as the assignment of error relates only to the minimum terms, and no exception or complaint has at any time been made by the state's counsel regarding the maximum terms. It is well for trial courts to bear in mind, however, in future cases, that, in view of the opinion of my associates as to the construction of section 9975 N. C. L., the maximum sentence in cases of this kind should be fixed at 20 years.

It is ordered and adjudged that the order denying a new trial be affirmed; that the judgment and sentence of the trial court be, and is hereby, modified, in respect to the defendant and appellant Neil Anderson, as follows: The minimum term of imprisonment in the state prison is hereby fixed, for said Neil Anderson, at three years instead of five years. The minimum term of imprisonment in the state prison, for the defendant Roy Squier, is hereby fixed at five years, the same minimum term as was fixed by the trial court. In all other respects, the judgment of the district court is affirmed.