## PEOPLE *v.* MINCHELLA.

1. INDICTMENT AND INFORMATION—RESTRICTION OF GRAND JURY.
   Motion to quash indictment for kidnapping on the ground the grand jury was restricted in its powers and had no right to find the indictment *held*, without merit.

2. JURY—CHALLENGE TO ARRAY.
   Challenge to array of jurors summoned under 3 Comp. Laws 1929, §§ 16541, 16542, providing for selection of jurors in municipal courts of record, *held*, properly overruled.

3. SAME—PEREMPTORY CHALLENGES.
   Peremptory challenges of one indicted for kidnapping were properly limited to five since sentence which may be imposed is limited to any term of years (3 Comp. Laws 1929, §§ 16732, 17305).

4. WITNESSES—TESTIMONY OF MISTRESS OF DEFENDANT.
   Admission of testimony of woman who had been married twice, perhaps divorced, and lived with defendant indicted for kidnapping and posed as his wife on certain occasions *held*, proper as against claim she was his wife.

5. CRIMINAL LAW—EVIDENCE—ABDUCTED CHILD.
   Credibility of seven and one-half year old boy who had been kidnapped two years previously and weight to be given his testimony on trial of his abductors was for jury and, on motion for new trial, for court.

6. KIDNAPPING—EVIDENCE.
   Evidence given on trial of defendants indicted for kidnapping boy five and one-half years old *held*, sufficient to sustain conviction and to warrant denial of new trial, where it was based largely on testimony of abducted boy, then two years older, who was unusually bright and had been examined by the court pursuant to 3 Comp. Laws 1929, § 14222, no objection raised by defendant's counsel as to omission to administer oath to boy, rigid cross-examination failed to shake his testimony as to material facts and there were some corroborating circumstances.

7. ARREST.

Officer's arrest of defendant after observing that he was driving car with foreign license plates in residential district at high rate of speed without lights, apparently going no particular place and occupants were closely watching onlookers *held*, legal.

8. CRIMINAL LAW—ARREST—PRESUMPTIONS.

There is no presumption that a man who is arrested is guilty of any offense, but what he may then say or do is admissible in its bearing upon effect of the arrest upon him.

9. SAME—FALSE ACCUSATION—PRESUMPTIONS.

The presumption is that one who is falsely accused will rely on his consciousness of innocence, while one who is guilty will resort to other means to obtain his freedom.

10. SAME—ARRESTING OFFICER—EVIDENCE AS TO OTHER OFFENSES.

Admission of testimony of arresting officer that defendant, on trial for kidnapping, had told of bootlegging activities *held*, proper in view of court's instruction that such testimony could not be taken as substantive evidence of crime charged.

11. SAME—ARRESTING OFFICER—OFFER OF BRIBE.

Admission of testimony of arresting officer that defendant, on trial for kidnapping, had offered a bribe *held*, proper, as tending to establish guilt where identification of defendant as an abductor had already been made.

Appeal from Recorder's Court of City of Detroit; Skillman (W. McKay), J. Submitted April 12, 1934. (Docket No. 147, Calendar No. 36,269.) Decided July 2, 1934.

Charles Minchella and Vincent Lamonna were convicted of kidnapping. Defendant Minchella appeals. Affirmed.

*Frank M. Kenney, Jr.,* for appellant.

*Patrick H. O'Brien,* Attorney General, *Harry S. Toy,* Prosecuting Attorney, *W. Gomer Krise,* Chief Assistant Prosecuting Attorney, and *Frank Sche-*

*manske* and *Edmund E. Shepherd,* Assistants Prosecuting Attorney, for the people.

NELSON SHARPE, C. J.   The defendant, Minchella, and one Vincent Lamonna were tried, convicted and sentenced under an indictment charging them with having, on the 30th day of September, 1929, kidnapped one Jackie Thompson.   Minchella, hereafter spoken of as the defendant, appeals.

Prior to the opening of the trial, defendant's counsel moved to quash the indictment on the ground that the grand jury was restricted in its powers, and had no right to find the indictment.   A quite similar question was presented in *People* v. *Kaplan,* 256 Mich. 36, and held to be without merit.

A challenge was interposed to the array of jurors. They were summoned under the provisions of Act No. 83, Pub. Acts 1923 (3 Comp. Laws 1929, §§ 16541, 16542), which was adopted in the city of Detroit on November 6, 1923, and became effective nine days thereafter.   The challenge was properly overruled.

Defendant's counsel insisted that under the charge as laid they were entitled to 20 peremptory challenges.   The punishment provided for kidnapping is—''by imprisonment in the State prison for any term of years, or by a fine of five thousand dollars, or by both such fine and imprisonment, in the discretion of the court.''   3 Comp. Laws 1929, § 16732.

Chapter 8, § 12 of our code of criminal procedure (3 Comp. Laws 1929, § 17305), provides that:

''Any person who is put on trial for an offense which is not punishable by death or life imprisonment shall be allowed to challenge peremptorily five of the persons drawn to serve as jurors and no more.''

The section following reads:

"Any person who is put on trial for an offense punishable by death or imprisonment for life, shall be allowed to challenge peremptorily twenty of the persons drawn to serve as jurors, and no more."

Section 17305 clearly applies to a kidnapping charge. The sentence imposed may be for any term of years, or by a fine. Imprisonment for life may not be imposed thereunder. There was no error in limiting the right of peremptory challenge to five jurors.

Error is assigned upon the admission of the testimony of Betty Kendall. When she was called the jury were excused at the request of defendant's counsel and she was interrogated as to her relation to the defendant, the claim being made that she was his wife. Defendant's counsel asked her if she knew the defendant, and she answered in the affirmative. He then asked her, "Are you his wife?" to which she answered, "No, sir." She further testified that she was then 25 years of age; that she was married in the State of Indiana to George Leader, and lived with him for three years; that her sister told her that she had read in a paper that her husband got a divorce; that she later married one Arlene Null; that "he was supposed to get a divorce, and he is married again now;" that she began living with the defendant as his mistress in Detroit in 1929; that they later went to Chicago, where they lived at a hotel under the name of Mr. and Mrs. Charles Fournier, and while living with him "we signed papers for a rooming house as husband and wife and we took each other as husband and wife at that time." She admitted that she had said to the prosecutor that she was "just living with him," and that

"He said sometime we would get married but he wouldn't say just when." We find no error in the admission of her testimony.

Jackie was but five and a half years of age at the time of his abduction, and seven and a half years old at the time of the trial. His was the only direct evidence connecting the defendant with the commission of the crime, and defendant's counsel strongly urges that it was insufficient to base a conviction upon, and that, in any event, a new trial should have been granted for this reason. His examination disclosed that he was an unusually bright boy. Before he was permitted to testify, he was examined by the court to ascertain whether he had sufficient intelligence and sense of obligation to tell the truth, as required by 3 Comp. Laws 1929, § 14222, and no objection was made by defendant's counsel to the fact that no oath or affirmation was administered to him.

There is no dispute about the fact that while Jackie was playing in front of his father's home he was kidnapped by two men, who took him some distance to a cottage for two days, and then taken by the same men to a farm, where he was kept concealed for 24 days, and then returned to his father after payment by him of the ransom agreed upon therefor. Jackie positively identified the defendant as the man who drove the car on both occasions. He also identified the car in which he was taken, and it was clearly established that the car belonged to the defendant. He was submitted to a rigid cross-examination by one of defendant's attorneys, and his testimony was not shaken as to any material fact.

His credibility and the weight to be given to his testimony were for the jury to pass upon, and also for the court on the motion for a new trial. Some children are very observant and are able to detail

with much accuracy that which they may see and hear. There were some corroborating circumstances. Lamonna as a witness admitted that he participated in the negotiations for ransom, but claimed that he had been forced to take part in them. Before his arrest, he and the defendant met and had several private conferences in New York, and they had together gone to a police officer in Detroit to intercede on behalf of James Fernando, who was then under arrest, charged with the kidnapping, and to whom the ransom had been paid. We find no error in the ruling of the court in this respect.

Error is assigned upon the admission of the testimony of Paul H. Wencel, a detective lieutenant in the city police department. He testified that after observing the actions of the defendant and Betty Kendall, heretofore referred to, he arrested the defendant, and, while riding in the rear seat of a car on the way to the police station, he asked the defendant what he was doing in the neighborhood, and he answered, "Well, I might as well tell you. I am a bootlegger. I just delivered ten cases of liquor in a garage back there;" that defendant took out his pocketbook, and offered him a $100 bill, and later increased the offer to $50 more as the car was pulling into the station. He stated that his name was Charles Mitchell.

As to his reason for making the arrest, the officer testified that he saw the two of them driving in a residence district in a car with an Illinois license on it; that he went to his home nearby, and that—

"While I was getting my cuffs, and gun and coat, they passed by in the car with the lights turned out. They went to the end of the street, and turned around again, and when they got to my place, they turned around the corner at a high rate of speed,

went south on Monica one block, and then turned east on Webb to Livernois, and then I saw them come around Tuxedo again on Livernois. That is when I called the radio car."

The actions of the defendant were such as would attract the attention of any observant police officer. He was driving at a high rate of speed in a car with a foreign license on it, and apparently going no particular place. When he first saw them, they were not in the car, were separated, and then together, and were apparently closely watching all onlookers. Under the circumstances it cannot be said that the arrest was illegal.

Error in the admission of the testimony of this witness is based upon the claim that the jury— "might have in their own minds tried him for bribery or attempted bribery and violation of the State prohibition law."

The only request relative to this testimony preferred by counsel for the defendant reads as follows:

"Testimony has been offered by the State to show that at the time of his arrest the defendant, Minchella, told the arresting officer that he had been delivering beer. I charge you that you are not to consider this matter in passing upon this case as it has no bearing whatever upon the question as to whether or not defendant was involved in the case upon trial."

It was included in the instructions as given. The court, however, added thereto:

"That fact alone, ladies and gentlemen of the jury, could not be taken by you as substantive evidence of the guilt of Minchella of the charge of kidnapping Jackie Thompson."

There is no presumption that a man who is arrested is guilty of any offense. What he may then say or do is admissible in its bearing upon the effect of the arrest upon him. An innocent man may be confused and excited and do and say things out of the ordinary, but it would be most unusual for him to attempt to bribe the officer for the purpose of securing his release. The presumption is that one who is falsely accused will rely on his consciousness of innocence, while one who is guilty will resort to other means to obtain his freedom. This effort on the part of the defendant may, or may not, have been due to his fear of arrest for the kidnapping of Jackie Thompson. He knew at that time that James Fernando, to whom the ransom had been paid, had been arrested on the kidnapping charge and that he and Lamonna had gone to a police officer, Herbert L. Hines, to intercede on his behalf, as before stated. Had the offer of the bribe been the only evidence connecting the defendant with the kidnapping, the holding in *People* v. *Pericino,* 227 Mich. 440, on which the defendant's counsel relies, would be applicable. But, as already stated, he had been identified as one of the men who abducted the boy.

In *People* v. *Higgins,* 127 Mich. 291, the defendant was convicted of the murder of one Dr. Ladd. A detective, looking for a man who was suspected of a burglary, went to the house where the defendant lived, and, seeing him standing upon the porch, recognized him as the man he wanted. When the defendant saw him, he went into the house and attempted to escape through the back door. He was captured and made certain admissions relative to the disposal by him of the articles stolen, and signed a letter referring thereto. He was afterwards tried on the charge of murder, and the testimony of what

had occurred at his home was admitted. The court said (p. 295):

"It was contended that, as the arrest had no connection with this offense, and the defendant did not know what he was arrested for, his conduct on that occasion was not admissible, and that it was not permissible to show that he had committed other offenses, and that the story was not so connected with the Ladd matter—especially as respondent testified that it was written before that occurrence—as to be admissible. We think that the learned circuit judge was commendably careful in receiving this testimony. The conduct of the defendant may or may not have been due to his fears of arrest for the Ladd matter, and the story may or may not show his knowledge of that affair. These are questions to be determined by the jury; but the circumstances were such as to make such inferences legitimate. Again, the fact that he owned and carried a 32-caliber revolver was pertinent. The testimony was none the less admissible because it necessarily involved a charge and arrest for other crimes. We think the court did not err in admitting the testimony of O'Brien, or in receiving the manuscript."

In *People* v. *Pitcher*, 15 Mich. 397, an officer went to the home of the defendant to serve a subpœna upon him. His wife told the officer that he was not at home, that he had gone to Ohio to purchase cattle. Proof was offered that the defendant was in the house at that time. It also appeared that on the next day he went to Adrian and falsely stated that he had just come in on the cars from Ohio. The court in its opinion, written by Mr. Justice CHRISTIANCY, said (p. 406):

"I see no legal objection to this testimony. It tended to show that he must have heard all that took place at his house while the officer was there; and

that he was in fear of arrest, which could ordinarily arise only from a consciousness of guilt.''

In 16 C. J. p. 541, it is said:

''An offer of a bribe by accused to the arresting officer to permit him to escape does not raise a presumption of law that accused is guilty, but is only a matter from which the jury are permitted to infer a fact when taken in connection with other evidence tending to establish guilt.''

No error was committed in the admission of this testimony. From a careful consideration of the entire record, we find that the defendant had a fair and impartial trial.

The judgment is affirmed.

POTTER, FEAD, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with NELSON SHARPE, C. J. NORTH and WIEST, JJ., concurred in the result.