## STATE v. ROBERTS.

No. 5643. Decided January 4, 1937. (63 P. [2d] 584.)

Rehearing Denied March 6, 1937.

*Lewis Larson,* of Manti, for appellant.

*Joseph Chez,* Atty. Gen., *Zelph S. Calder,* Deputy Atty. Gen., and *Ellis J. Pickett,* Dist. Atty., of St. George, for the State.

EPHRAIM HANSON, Justice.

The defendant was found guilty of rape and was sentenced to the state prison for a period of not less than five years. In the selection of the jury the trial court limited defendant to four peremptory challenges. Defendant there contended, and contends here, that he was entitled to ten peremptory challenges. Section 105-31-15, R. S. Utah 1933, provides that

"the defendant and the state shall each be entitled to peremptory challenges as follows: (1) If the offense charged is punishable with death or by imprisonment for life, to the number of ten. (2) If the offense charged is a felony, other than those above mentioned, to the number of four."

Section 103-51-18, R. S. 1933, provides that

"Rape is punishable by imprisonment in the state prison not less than five years."

Section 103-1-34 provides:

"Whenever any person is declared punishable for a crime by imprisonment in the state prison for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, the court authorized to pronounce judgment upon such conviction shall sentence such offender to imprisonment for an indefinite term limited by the minimum term prescribed and the term of his natural life."

Section 105-36-20, R. S. 1933, provides that, where the judgment provides for punishment in the state prison, with certain exceptions not pertinent here, the court shall not fix a definite term of imprisonment. The sentence of imprisonment shall be for a period not less than the minimum and not to exceed the maximum term provided by law for the crime involved; that such sentence

"shall * * * be construed and held to be a sentence for a term between the minimum and maximum periods of time provided by law for the particular crime of which the person is convicted, and shall continue in full force and effect until the maximum period has been reached, unless sooner terminated or commuted as provided by law."

Defendant contends that, since these statutes fix an indeterminate sentence which may run for life, he was entitled to ten peremptory challenges. With this we cannot agree. It does not follow necessarily that because the sentence is indefinite it must be considered as being a sentence to life imprisonment. Under the section last above cited it is to be construed as being for a time between the minimum and the maximum. The punishment for rape is imprisonment for not less than five years. Whatever the term may be above five years is entirely uncertain and indefinite, and by statute the court is directed to leave it uncertain. The statute, by its terms, therefore, does not prescribe life imprisonment nor could the court impose life imprisonment. There is no discretion given the court such as existed under sections 8532 and 7899, Comp. Laws Utah 1917. The term is left wholly indeterminate. We are of the opinion that the Legislature intended the defendant should have ten peremptory challenges only in those cases involving a crime where the penalty fixed is death or life imprisonment. It might be well to point out that section 105-31-15, supra, was amended by chapter 128, Laws of Utah 1935, to the effect that the defendant may have ten challenges if the offense is punishable by death and four challenges if the offense charged is a felony not punishable by death, so that the rule herein announced is in effect adop-

ted by the statute. The courts of California have held in a long line of cases that under statutes somewhat similar to ours the right to the maximum number of challenges exists only in cases where no shorter sentence than life imprisonment may be imposed. See *People* v. *Clough,* 59 Cal. 438; *People* v. *Sullivan,* 132 Cal. 93, 64 P. 90; *People* v. *Fultz,* 109 Cal. 258, 41 P. 1040; *People* v. *Riley,* 65 Cal. 107, 3 P. 413; *People* v. *Purio,* 49 Cal. App. 685, 194 P. 74. The same result was reached in the case of *People* v. *Calzada,* 22 Porto Rico, 406. In the case of *State* v. *Squier,* 56 Nev. 386, 54 P. (2d) 227, the court reviews these California cases. See, also, *People* v. *Minchella,* 268 Mich. 123, 255 N. W. 735, 93 A. L. R. 805. In the more recent case of *People* v. *Purio,* 49 Cal. App. 685, 194 P. 74, 75, the California appellate court said:

"It is contended that, since the crime of robbery may be punished by imprisonment in the state prison for life, the defendants, by virtue of said section, were entitled to twenty of such challenges. The said provision, however, applies only to cases where no shorter sentence may be imposed. It is not applicable where the punishment, in the discretion of the court, may be less than life. It therefore does not apply to the crime of robbery wherein the statute has provided that it is punishable by imprisonment in the state prison not less than one year. Section 213, Pen. Code. This has been decided by the Supreme Court in the following cases: [Citing a number of cases just previously herein cited.] It may be added that the recent change in the law providing for an indeterminate sentence has not affected the rule in reference to the number of peremptory challenges."

There were no errors in limiting defendant to four peremptory challenges.

Defendant next contends that the trial court erred in admitting testimony of Betty Henderson concerning statements made to her by the prosecutrix after the commission of the offense and out of the presence of the defendant. The evidence shows that the assault occurred about a mile and a quarter from the town of Cedar City; that immediately after its commission the defendant drove the prosecutrix in his automobile to the tourist cabin where she and Miss Henderson were staying; that upon her

return to the cabin, and at her first opportunity, prosecutrix asked Miss Henderson to accompany her to the restroom provided in the tourist camp; that while in the restroom the statements objected to by defendant were made. During the examination of Miss Henderson by the district attorney, she testified that the prosecutrix showed her the condition of her private parts. She was then bleeding. The witness was then asked:

"Q. What did she say with reference to that and what had happened? A. Why she says Mr. Roberts had taken her out on the highway some place and—

"Mr. Larson: I want to object to that question for the reason it is hearsay, no part of the res gestae, a statement made out of the presence of the defendant at a time when he wasn't present, a considerable length of time after the alleged occurrence."

The objection was overruled. The witness thereupon answered:

"She said he had taken her out on the highway and forced intercourse. She says: 'I am almost ripped to pieces.' "

Both sides rely on *State* v. *Christensen,* 73 Utah 575, 276 P. 163, 165. In that case the court held there was no error in permitting the mother of the prosecutrix to testify that the prosecutrix said:

"Mama, I hope I haven't disgraced you; this man has had something to do with me. She said he had sexual intercourse with her. She made statements as to conditions under which act of sexual intercourse took place. She told me he had whiskey he poured down her."

The court said:

"It undoubtedly was competent to give testimony that the prosecutrix complained of an injury or outrage inflicted upon her and the nature and character of it, where and when it occurred, and that some one forcibly and against her will and consent had sexual intercourse with her, had ravished her. * * * It was competent to give testimony not only that the prosecutrix complained of an act of sexual intercourse, but also that it was had with force and violence, that she was ravished."

While that case recognized the rule that generally it is not competent to give testimony of the name of the person or who it was that committed the outrage upon her, yet, where the defendant admitted having had intercourse and only denied the use of force, the admission of such testimony was harmless. Aside from her having named defendant, the statement of the prosecutrix in the instant case did not attempt to describe details. It simply tended to show that the act of intercourse had been consummated by force and violence. A case somewhat similar is *People* v. *Rotello*, 339 Ill. 448, 171 N. E. 540. We think that under the authority of these cases no reversible error was committed in receiving this testimony. It should be pointed out, also, that the question itself was not objectionable, for it is clear that the witness could testify as to what the prosecutrix had said had happened. If the answer included matter that was objectionable, a motion to strike such portions should have been made. No such motion was made. We deem it unnecessary to determine whether the statement of the prosecutrix made to this witness would be admissible as a part of the res gestæ, and upon that question we express no opinion.

At the close of the State's case, defendant made a motion for a directed verdict on the ground that the evidence introduced in the case was not sufficient to sustain a verdict of guilty. Defendant also argues that the court erred in rendering its judgment on the verdict of guilty, as there was not sufficient evidence to justify the verdict or to justify a judgment of conviction. It is defendant's contention that there was not sufficient evidence of resistance on the part of the prosecutrix to the alleged rape and not sufficient evidence of force on the part of defendant to characterize the act complained of as rape.

We deem it unnecessary to make a detailed statement of all that occurred on the occasion in question. As to whether prosecutrix offered resistance and defendant used force to consummate the alleged rape, the evidence offered by the State tended to prove that defendant had taken the prose-

cutrix in his automobile, somewhat against her will, about 10:30 at night to a secluded lane about a mile and a quarter north and west of Cedar City. At that place he stopped his automobile, turned off the lights, and proceeded to force his attentions upon her. She resisted his advances and got out of the automobile. He then proceeded to tear off her clothing. She pleaded with him, cried for help, and kept kicking and trying to get away from him. He threatened to kill her and leave her. He backed her towards the car and practically threw her into it, himself coming in on top of her. She kicked and screamed hysterically. He had one hand on her chin and throat, forcing her head in such a position that she choked and could not talk. Her head was then under the steering wheel. He finally forced her body into such a position that he succeeded in consummating the act of intercourse. The next morning prosecutrix was examined by a physician. He testified that her hymen was then bleeding and that it had not been ruptured longer than twenty-four hours before the examination. He examined her again the day following and found bruises on her hips and on her neck. Prosecutrix showed herself to her friend, Miss Henderson, immediately upon getting back to the cabin. Miss Henderson testified she was then bleeding; that she was white as a sheet; that she had been crying and was almost hysterical. Her clothing was torn and had to be held up by her. The torn clothing was introduced in evidence.

In certain decisions the courts have stated broadly that the State must show that the female resisted to her uttermost capacity to prevent penetration in order to show that there was no consent and that the act was forcibly done. We think such a rule is too strict and that the trend of the more modern decisions is not to require such a showing. In the case of *People* v. *Norrington,* 55 Cal. App. 103, 202 P. 932, 933, 935, the court quotes as follows from *State* v. *Neil,* 13 Idaho, 539, 90 P. 860, 91 P. 318:

"A * * * number of authorities are cited by counsel for appellant to the effect that the state must show in such cases that the female

showed the utmost reluctance and used the utmost resistance.' *Devoy* v. *State*, 122 Wis. 148, 99 N. W. 455. To our minds the trouble with a number of these authorities is that they reverse the order of the inquiry. They go about inquiring into the kind, character, and nature of the fight put up by the woman, rather than the nature of the assault and evident and manifest purpose and intent of the assailant. For the purpose of reaching the conclusions announced in some of these cases it is necessary to assume that, in the first place, a man has a right to approach a woman, lay hold on her person, take indecent liberties with her, and that unless she 'kicks, bites, scratches and screams' (*People* v. *Morrison*, 1 Park. Cr. R. [N. Y.] 625) to the 'utmost of her power and ability,' she will be deemed to have consented, and indeed to have invited the familiarity. Such is neither justice, law nor sound reason."

In the case of *Magwire* v. *People*, 77 Colo. 149, 235 P. 339, 340, the court says:

"This is the old rule of 'resistance to the uttermost,' repudiated by the more modern and enlightened authorities, which require only such resistance as age, mental and physical condition, and surrounding facts and circumstances demand to make opposition reasonably manifest."

In the case of *Bulls* v. *State*, 33 Okl. Cr. 64, 241 P. 605, 606, the court used this language:

"The old rule of 'resistance to the uttermost' is obsolete, and is repudiated by the more modern authorities. The law does not require that the woman shall do more than her age, strength, the surrounding facts, and all attending circumstances make it reasonable for her to do in order to manifest her opposition. In reference to the degree of resistance required, the jury should be instructed that it is necessary, not that the prosecutrix should have made the uttermost resistance, but that she has made such resistance as she was capable of making at the time."

The question of the credibility of the witnesses is for the jury and, if there is competent evidence upon which reasonable and unprejudiced minds might draw different conclusions, the jurys' findings will not be disturbed. *State* v. *Bayes*, 47 Utah 474, 155 P. 335; *State* v. *Karas*, 43 Utah 506, 136 P. 788. Under all of the evidence it was a question for the jury whether prosecutrix offered such

resistance as was necessary to convict defendant of the crime charged. *State* v. *Cox*, 172 Minn. 226, 215 N. W. 189; *State* v. *Montgomery*, 79 Iowa 737, 45 N. W. 292; *State* v. *Squier,* supra; *People* v. *Rotello,* supra; *Magwire* v. *People,* supra. We are of the opinion that the evidence taken as a whole was sufficient to sustain the verdict and the judgment entered thereon. The fact that there was some contradictory evidence or that conflicting inferences might reasonably be deduced from the evidence does not warrant us in disturbing the verdict of the jury. 52 C. J. 1091, 1092; *People* v. *Norrington,* supra.

Defendant denied using force and testified that prosecutrix consented. It is without dispute that she rode back to the cabin in his automobile after the alleged assault. There was also some testimony to the effect that she accepted 20 or 30 cents from him on the way back to the cabin. Defendant contends that this conduct on her part, after the commission of the alleged crime shows that no rape occurred. Prosecutrix testified she did not ask for money and that she took the money he offered because she was afraid to refuse it. The mere fact that she received money from defendant does not of itself establish consent. 52 C. J. 1092. The jury could properly consider the conduct of the prosecutrix towards defendant after the commission of the assault as bearing upon whether she consented. The trial court recognized this and by his instructions fully presented this phase of the case to the jury for their consideration. The jury found against defendant's contentions, and we do not think that the evidence is such as would require us to reverse the jury's finding.

No error appearing in the record, the judgment of the lower court is affirmed.

FOLLAND, Justice (concurring).

I concur in the opinion of Mr. Justice EPHRAIM HANSON with the exception of what is said respecting the term of imprisonment prescribed by statute for rape and the

number of peremptory challenges to which the defendant is entitled. Section 103-51-18 provides:

"Rape is punishable by imprisonment in the state prison not less than five years."

Section 103-134 provides in such cases

"the court authorized to pronounce judgment upon such conviction shall sentence such offender to imprisonment for an indefinite term limited by the minimum term prescribed and the term of his natural life."

Before adoption of the indeterminate sentence law the trial court was required to pronounce sentence for a definite term which would be not less than the minimum prescribed by statute and not more than the maximum; that is, the sentence for rape might be life imprisonment ▮▮▮▮ or for a definite term of years not less than five years. Now under the provisions of section 105-36-20 the judgment or sentence of the court must be "for a period of time not less than the minimum and not to exceed the maximum term provided by law," and the statute further says that such sentence "shall continue in full force and effect until the maximum period has been reached, unless sooner terminated or commuted as provided by law." In other words, the sentence is for the maximum period or term prescribed by law for the particular offense. *Lee Lim* v. *Davis*, 75 Utah 245, 284 P. 323, 76 A. L. R. 460; *Mutart* v. *Pratt*, 51 Utah 246, 170 P. 67; *People* v. *Webster*, 362 Ill. 226, 198 N. E. 322; *People* v. *McNabb*, 3 Cal. (2d) 441, 45 P. (2d) 334; 29 C. J. 57. The offense of rape therefore is punishable by life imprisonment. The word "punishable" used in section 103-51-18 is defined in Webster's New International Dictionary as "Deserving of, or liable to, punishment; capable of being punished by law or right—said of persons or offenses." The courts have defined it to mean not must but may; that is, may be punished, or liable to be punished. *People* v. *Murphy*, 185 Ill. 623, 57 N. E. 820. One convicted of rape is not only liable to punishment by im-

prisonment for the period of his natural life but that is the sentence actually imposed, a term for life. Only termination or commutation by the Board of Pardons can shorten that term. The crime of murder in the first degree is punishable by death, but it could not be said, for the purpose of determining the number of challenges of jurors the defendant would be entitled to, that such crime is not punishable by death because the Board of Pardons has the power which it may exercise to commute the sentence to life imprisonment or to a term of years. The statute says the defendant may have ten peremptory challenges "if the offense charged is punishable with death or by imprisonment for life." Section 105-31-15 was amended by chapter 128, Laws of Utah 1935, by striking the phrase "or by imprisonment for life." The prevailing opinion says the rule therein announced is in effect adopted by the statute. If the rule announced in the prevailing opinion is correct, there was no need for the amendment. The mere statement that the words "or imprisonment for life" are dropped in the amendment would signify that some change was intended, and, in fact, accomplished thereby. A defendant is entitled to the number of challenges corresponding to the greatest punishment that may be inflicted on him. *State* v. *Puckett*, 39 N. M. 511, 50 P. (2d) 964; 13 C. J. 413. The defendant in this case therefore was entitled to ten peremptory challenges instead of four, if he should choose to exercise them.

A number of California cases are cited in the prevailing opinion to the effect that under the California law which is somewhat similar to ours, "the right to the maximum number of challenges exists only in cases where no shorter sentence than life imprisonment may be imposed." If this language be taken literally, the cases are not in point, because under the indeterminate sentence law of this State no sentence may be imposed except the one provided by statute, and that is in effect life imprisonment. As already shown, this sentence can be shortened or modified only by action of the Board of Pardons. However, in a later California

case, while it follows the earlier cases, doubt is cast on the correctness of the rule. In *People* v. *Logan*, 123 Cal. 414, 56 P. 56, the California court said:

"And, if the question of the construction of the statute pertaining to the number of peremptory challenges to which a defendant convicted of rape is entitled were now before us for the first time, the court might probably agree with defendant's contention. But this is not a new question, and the authorities of this state are the other way. * * * We feel that the law had best stand as it has been heretofore announced."

In this State the question is new. We are not handicapped by any decisions standing in the way of a natural and consistent interpretation of the statute. The law has now been changed, so there is no danger of our interpretation causing unnecessary consumption of time in the impaneling of juries in future cases. There is no need to give the plain wording of the statute a forced interpretation. The case of *People* v. *Minchella*, 268 Mich. 123, 255 N. W. 735, 93 A. L. R. 805, is cited. The case clearly has no bearing here because, as the court said, the sentence for the crime charged may be for any term of years, or by fine, but that imprisonment for life could not be inflicted.

A possible, but as I think unnatural, interpretation of the statute would be to read it as if it applied only to cases where the penalty provided by law was either death or imprisonment for life, as in the case of murder in the first degree; that is, the punishment for rape involving only life imprisonment, the statute does not apply because it does not, as an alternative, involve the death penalty.

However, this court is not required to pass on the question of the number of peremptory challenges to which defendant was entitled because by the record no prejudice is shown him. He did not attempt to exercise any additional challenges, and there is no intimation that he ■ was not satisfied with the jury as impaneled. His counsel merely announced to the court, after exercising his fourth challenge, "we have a right to ten challenges if we

■

want them." After some discussion and argument with respect to the punishment pronounced by law for rape, the court said: "The jury may be sworn," and counsel for defendant noted an exception. There is no intimation here that defendant desired to or would have exercised any more challenges had the court ruled differently or that he did "want them." It was merely the abstract question of whether he had ten challenges if he wanted them that was put to the court without any intimation whatever that he wished to exercise any of them. Defendant was not obliged to exercise any of the challenges if he was satisfied with the jury as then made up. He had the right to waive any or all of his peremptory challenges. *State* v. *Aikers*, 87 Utah, 507, 51 P. (2d) 1052. As has been said:

"* * * there is but one way for a person on trial to show that he is prejudiced in such a situation, which is to seek to exercise his right —to exhaust his remedy." *State* v. *Squier*, 56 Nev. 386, 54 P. (2d) 227, 232; *State* v. *Collins*, 53 Mont. 213, 163 P. 102.

Judgments are not reversed in this jurisdiction where the errors or defects do not affect the substantial rights of the party. Section 105-43-1. In other words, the statement of counsel that he had a right to more challenges if he wanted them is not the assertion of a right or an effort to challenge or get rid of an unwanted or unsatisfactory juror. His statement is entirely consistent with satisfaction with the jurors then on the panel and the assertion of mere curiosity to have the court pass on an abstract question of procedure. I concur in the order affirming the judgment of the trial court.

ELIAS HANSEN, Chief Justice (concurring).

I concur in the concurring opinion of Mr. Justice FOLLAND.

WOLFE, Justice (concurring).

I think the Legislature actually meant to confine what is now section 105-31-15, R. S. Utah 1933, to the crimes of

murder and treason when the act was first passed. In 1911 the penalty for robbery could have been life (Laws 1911, c. 7). The indeterminate sentence did not come until 1919 (Laws 1919, c. 132). Consequently, the court from 1911 to 1919 could have actually given the definite determinate sentence of life in the case of robbery. During a certain period the same was true of rape. Certainly, these crimes must have come in under the wording of what is now section 105-31-15, R. S. 1933, because the court had the same discretion to give life as a definite determinate sentence in case of conviction of those crimes as it did in second degree murder where it could give a term of years or life. I doubt whether the legislature actually meant to do this, but it was the undoubted effect. I cannot see that the indeterminate sentence law took these crimes out of the category of charges wherein the defendant was entitled to ten peremptory challenges where the law had previously put them. True, it made life a limit on one end of the sentence and the period between the minimum and life was the period in which the indeterminateness might range, but, if the Board of Pardons did not sooner release the prisoner, he would be in for life in robbery and rape cases. Before 1919 the Board of Pardons could commute a judge-imposed sentence of life in the cases of rape, robbery, second degree murder, and any other crime in which the judge might impose life. After 1919, the same effect would be obtained by the nonaction rather than the action of the Board of Pardons. I cannot see that this distinction lifts these crimes out of the category in which they were put before 1919. I think the reasoning is against following the California cases.

I must therefore concur with Mr. Justice FOLLAND in this respect and also in his views that the defendant cannot claim prejudicial error. In the remaining aspects of the case, I concur with Mr. Justice EPHRAIM HANSON.