## LYNCH v. OREGON LUMBER CO. et al.
### No. 9116.

Circuit Court of Appeals, Ninth Circuit.
Dec. 19, 1939.

Green & Boesen, B. A. Green, Chris Boesen, and R. K. Powell, all of Portland, Or., for appellant.

E. L. McDougal and Randall S. Jones, both of Portland, Or., for appellees.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

In an action brought by appellant to recover for personal injuries, judgment and verdict were rendered for appellees. Appellant seeks review of the judgment urging only error in the instructions of the court.

Appellant was employed by the company as a "choker setter" in a logging camp belonging to the company. The company was engaged in bringing logs from the woods to a spar tree by means of power-driven donkey engines. The spar tree was on the top of a hill. The logs were then hauled from a pile at that point some seven hundred feet to a loading landing by means of a tractor which normally hauled five or six logs at a time. Appellant placed chokers on the logs in the pile, and one Harpell then hooked them on to the tractor. On one trip two loose logs were carried on top of the logs attached to the tractor for a distance of fifty to eighty feet where they rolled off the other logs. When they came to rest the logs were not quite parallel. The ends of the logs farthest uphill were from five to eight feet apart, but the other ends were crossed. Both logs were about forty feet long, the upper log having a larger diameter than the lower. When appellant attempted to place a choker on the lower log, the upper one rolled off and struck him, inflicting the injuries of which he complains.

It was alleged that appellees were negligent in the following particulars:

1. In compelling plaintiff to work in and about a place of great danger; that is to say, immediately under a log hanging in the precarious position hereinbefore described.

2. In not securing said upper log before attempting to put the choker around the lower log, so as to prevent the same from falling upon plaintiff in the manner hereinbefore described.

3. In not inspecting said logs before directing plaintiff to put a choker around the same.

4. In dropping said logs and leaving them in the dangerous position hereinbefore described.

5. In failing and neglecting to employ for said operation a "rigging slinger", or other supervising employe, to direct and supervise the detailed work of the plaintiff, and his fellow-workmen, and to inspect, discover and correct the dangerous and hazardous conditions, as hereinbefore described, likely to injure said plaintiff and other employes.

A sixth charge, in general, covered all the foregoing particulars.

The evidence was agreed that Harpell was appellant's immediate superior; that the lower ends of the two loose logs did not touch the ground at that point; and

that if the end of one loose log was on the end of the other loose log, the latter could not have been "choked" from the end. Evidence that there was "lots of loose chunks and limbs" and loose dirt at the stump where the accident occurred, was not controverted.

Appellant's version of the accident was that as the tractor started for the loading landing, one log attached to the tractor "hung up" on a stump, and at that point the two loose logs rolled off the others; that the log which had "hung up" was then disconnected, and Harpell called to appellant telling him to bring two chokers; that Harpell took one choker and choked the top log and told appellant to "snare" the lower log; that he could not choke the lower log from the end because the end of the upper log rested on the end of the lower log; that he could not choke the lower log from the side opposite to the one used, because the log which had "hung up" prevented it; and that the ends of all three logs did not extend beyond the stump. Harpell, testifying for appellee, admitted he called for two chokers, denied that he had told appellant to choke the lower log, saying that he "left him to use his own judgment in getting them on there", and denied that he choked the upper log before the accident. He testified that the ends of the logs extended beyond the stump about four feet; that there were only two logs there, and that appellant could have choked the lower log from the side opposite to the one used.

Witnesses Olds and Boardwell testified for appellee that they were working near the spar tree; that they did not see the accident when it happened, but went to the stump immediately after it happened; that there was no choker on the top log; that appellant could have choked the log from the side opposite to the one he used; and that the ends of the logs extended beyond the stump about four feet. Olds agreed with appellant that there were three logs at the stump, a point concerning which Boardwell did not testify.

Appellant further testified that he did not wait for the tractor to pull the top log off the other, because the "camp boss" had given orders to have the chokers set so that the tractor would not be delayed upon its return from the landing. The "camp boss" testified that the orders were "to set as many chokers as possible, where safe". Harpell testified that his "understanding was that that equipment was to be kept rolling on that job".

Finally, appellant testified that "When I looked at this log before I went under, it looked perfectly safe to me" and

"Q. Now, did you do anything to the log, touch it or anything, before you went under it? A. I put my hand up on it and it looked comparatively solid."

The trial court instructed the jury that his instructions as to the law were final and binding, and

"On the other hand, I have the power to suggest to you what my idea is as to the determination of the questions of fact. I can sum up the evidence in the case and give you an idea. I do not intend to do that, gentlemen, because you are competent judges of the weight and value of the evidence. I want to give you a caution in that regard, that insofar as I have given any idea of what I think about the weight or value of the evidence or credibility of witnesses, that you are not bound by that, any more than you are by the suggestions made to you by counsel. You are the sole and exclusive judges of the facts in this case, and even though you may have some idea as to how I might determine the case if it were left up to me, it is your duty to decide it according to your own lights and you need not follow me in any suggestion of the way I would determine the matters of fact in the case. That is your exclusive duty, gentlemen.

"With that introduction, gentlemen, I will now proceed to talk about the legal basis of this case. * * *"

Thereafter a number of instructions, which will be hereafter considered, were given to which exceptions were taken by appellant. The jury returned a verdict for appellees, and this appeal was taken from the judgment rendered thereon.

Before considering the specific questions raised, we advert to one contention made by appellees to the effect that the burden is on appellant to show both error and prejudice. Appellees rely on Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314, and Valley Shoe Corporation v. Stout, 8 Cir., 98 F.2d 514, 520, which is based on the former.

Prior to February 26, 1919, the established rule was that the burden was on appellant to show error, and that error, shown, was presumed to be prejudicial unless the contrary was affirmatively shown by the record. Crawford v. United States, 212 U.S. 183, 203, 29 S.Ct. 260, 53 L.Ed. 465, 15 Ann.Cas. 392; Fillippon v. Albion

Vein Slate Co., 250 U.S. 76, 82, 39 S.Ct. 435, 63 L.Ed. 853. The Act of February 26, 1919, Ch. 48, 40 Stat. 1181, 28 U.S.C.A. § 391, amended § 269 of the Judicial Code by adding the sentence to the effect that an appellate court should give judgment after an examination of the entire record "without regard to technical errors,. defects, or exceptions which do not affect the substantial rights of the parties". On October 5, 1920, it was held that the amendment changed the previous rule and required appellant to show both error and prejudice (Haywood v. United States, 7 Cir., 268 F. 795, 798), and that decision was followed in other circuits.

On January 4, 1926, the Supreme Court said in United States v. River Rouge Co., 269 U.S. 411, 421, 46 S.Ct. 144, 148, 70 L. Ed. 339, that it would "not enter upon a discussion of the divergent views which have been expressed in various Circuit Courts of Appeals as to the effect of the Act of 1919", and held that the amendment had not changed the rule that a presumption of prejudice arose upon a showing of error. That case was followed in Williams v. Great Southern Lumber Co., 277 U.S. 19, 26, 48 S.Ct. 417, 72 L.Ed. 761. This court, on January 7, 1935, held to the contrary, in McCandless v. United States, · 9 Cir., 74 F.2d 596, 602, and the rule thus stated seemed to have the approval of the Supreme Court in Berger v. United States, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314, decided on the following April 15th. Thereafter, certiorari was granted in Mc-Candless v. United States, supra (296 U.S. 570, 56 S.Ct. 308, 80 L.Ed. 403), and the judgment of this court was reversed without reference to Berger v. United States, supra. McCandless v. United States, 298 U.S. 342, 347, 56 S.Ct. 764, 80 L.Ed. 1205.

Since McCandless v. United States, 298 U.S. 342, 347, 56 S.Ct. 764, 766, 80 L.Ed. 1205, is latest in time, it must be taken as overruling Berger v. United States, supra, and as establishing the rule that if error is shown, then there should be reversal "unless it *affirmatively* appears from the whole record that it was not prejudicial".

■ The court below instructed the jury as to some general rules before instructions were given as to specific rules governing liability. Among them was an instruction regarding "unavoidable accidents" which was followed by this instruction:

"There is a situation which I shall suggest to you, and that is that the plaintiff in this case testified that before he attempted to choke this log he put his hand upon it and it seemed firm to him, or apparently— 'comparatively', I think, was the word he used. You will remember that testimony. I am not trying to quote it just exactly, but you will remember his testimony. Now, if that is the situation, gentlemen, it might be that the accident then was without fault of any kind. *It has not been outlined in the testimony or the evidence in this case as to why this log fell, and I think that any inference that is drawn as to why the log fell is pure speculation, because I do not think that the evidence outlines any situation from which you could determine what was the cause of the fall of the log."* [Italics supplied].

Appellant contends that the portion of the instruction italicized was erroneous because the evidence shows that the log fell because of its precarious position; that although no exception was taken to the instruction, this court should notice the error as a "plain error" unassigned pursuant to our Rule 11.

In the first place the part of our former Rule 11 relating to "plain" errors, is not to be found in our revised rules effective December 19, 1938, as amended. See Rule 20 (2) (d). Secondly, the difficulty is not cured by considering that we have such a rule, because Rule 51 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides in part that "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

■ The first charge of negligence was to the effect that it was negligence for the company to compel appellant to work under a log in the precarious position of the one which struck appellant. The court, regarding that charge, mentioned the conflict in the evidence to the jury as to whether appellant had been ordered to choke the lower log, and if so whether it should be implied that appellant was to go under the log to do so. The court then stated that the Oregon Employers' Liability Act, conceded to be applicable here, did not require the employer to supervise each detail of the work, and " * * * Also into that question enters the suggestion which I made to you a while ago that the plaintiff himself apparently considered that the

place was not one of great danger himself. If that were the situation he could hardly charge negligence to the defendant for not knowing that the place was dangerous when the plaintiff himself did not think it was."

Appellant contends that the quoted instruction was erroneous because it applied as a test the thought or belief of the appellant, and not the correct test as set forth in the statutes mentioned. Appellees contend that such instruction was not an instruction of law, but a comment on the evidence, which was within the discretion of the court, and that the effect of the instruction was that in the court's opinion it was doubtful that the evidence disclosed negligence.

Ore.Code Ann. § 49-1701 provides in part: " * * * all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb * * * ." The following section provides: "The manager, superintendent, foreman or other person in charge or control of the construction or works or operation, or any part thereof, shall be held to be the agent of the employer in all suits for damages for death or injury suffered by an employee." As specified in the statute, the employer must use every "care and precaution which it is practicable to use for the protection and safety of life and limb".

Many, if not most injuries occur when employees believe danger is not present. Few employees would deliberately invite an injury. The employee's belief as to danger is immaterial except insofar as it is some evidence as to whether a reasonable man would have done no more than the employer did in view of the high degree of care required. To justify the instruction on the ground that the employer is not compelled to supervise every detail (see Van Norden v. Chas. R. McCormick Lumber Co., 9 Cir., 17 F.2d 568, 569) is to ignore the evidence of appellant that Harpell did supervise the particular detail by directing him to choke the lower log. If the instruction was one of law, we think it should not have been given.

It is clear that the trial court abandoned its previously expressed intention that no "idea" would be given as to its opinion of the facts, if the questioned instruction is considered to be a comment on the evidence. We see no reason for deciding whether the instruction was one of law or merely a comment on the evidence, because if the latter, it is condemned by Tracy v. Swartwout, 35 U.S. 801, 10 Pet. 80, 94, 95, 9 L.Ed. 354, where it is said: " * * * A court may not only present the facts proved, in their charge to the jury; but give their opinion as to those facts, for the consideration of the jury. But, as the jurors are the triers of facts, such an expression of opinion by the court should be so guarded as to leave the jury free in the exercise of their own judgments. *They should be made distinctly to understand, that the instruction was not given as a point of law, by which they were to be governed; but as a mere opinion, as to the facts, and to which they should give no more weight than it was entitled to. * * * "* [Italics supplied.] See also: Starr v. United States, 153 U.S. 614, 625, 14 S.Ct. 919, 38 L.Ed. 841. In view of the fact that the influence of the trial court is necessarily "of great weight" we should guard against possible error in its use. We think that the nature of the instruction (if considered as a comment on the evidence) was not "distinctly" stated.

After relating appellant's second charge of negligence, the trial court then stated: "Of course, in that charge, gentlemen, also appears the question of whether it looked dangerous to him. If it was obvious that the upper log should have been secured, why, then the company might have been guilty of negligence in failing to secure it, but the question is whether in the general supervision of this work, without regard to detail of a particular situation in which an experienced woodsman was engaged, the company did neglect every device, care and precaution." This instruction clearly illustrates a lack of separation between law and fact. The part beginning with the word "but" deals with matters of law. The preceding part of the sentence, if an instruction of law, is we think, erroneous, and if a comment on the evidence, *it appears in the same sentence containing* matters of law. Again, there is a lack of distinctness.

The court then quoted the third charge of negligence, and then stated: "Again we have the same situation, that the plaintiff himself inspected the log and came to the conclusion that it was not dangerous. It

is doubtful if he can charge to the defendant a failure to inspect." This instruction is subject to the same vice as the two preceding instructions.

The judgment is reversed and the cause is remanded for a new trial.