**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Isaac BOOKIE and Fred Petrucci,
Defendants-Appellants.**

**No. 11498.**

United States Court of Appeals
Seventh Circuit.

Jan. 12, 1956.

George F. Callaghan, Myer H. Gladstone, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., John Peter Lulinski, Anna R. Lavin, Edward J. Calihan, Jr., William T. Hart, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before FINNEGAN, LINDLEY and SCHNACKENBERG, Circuit Judges.

LINDLEY, Circuit Judge.

Defendants were convicted on an indictment charging them with the possession of a narcotic drug not in, or withdrawn from, an original stamped package, in violation of 26 U.S.C. § 2553 (a) and with receiving, concealing and facilitating the transportation and concealment after importation, of the same drug, knowing the same to have been imported in violation of law, in violation of 21 U.S.C.A. § 174.

With the exception of evidence as to the custody, chemical analysis and identification of the narcotic, the government rested its case on the testimony of witnesses Sims and Bryson, officers of the Chicago Police Department. Sims testified that, on March 18, 1953, he and Bryson went to a store in Chicago operated by one Willie Hubbard. While they were there, a telephone call came in for Hubbard. Sims, standing beside Hubbard and placing his ear near the receiver, listened to the ensuing conversation. He did not then recognize the voice of the caller, whom Hubbard greeted as "Fred", but, following his arrest of defendants, he recognized the voice of Petrucci as that of the party who had called Hubbard. His testimony as to the conversation overheard follows: Fred, "How are you fixed for stuff?" Hubbard, "I am out of stuff now." Fred, "Meet me at the same place at the same time and you can pick up some stuff. How much do you want?" Hubbard, "Two ounces." Fred, "Meet me at the same place at the same time."

Sims testified further that about 7 P. M. the same evening, he went with Hubbard in the latter's automobile to the 1700 block on North Clybourn Street, where they parked. Bryson followed in a second car, which he parked shortly behind Hubbard. After a short while, a third automobile containing two men approached and parked about 1½ car lengths in front of Hubbard. Defendant Bookie got out of the last mentioned vehicle and walked back to where Hubbard was parked. Sims, who was at that time crouched behind the back of the front seat in the rear of Hubbard's automobile, overheard Bookie say, as he approached the car, "Hi, Willie, do you have the money?" Hubbard replied, "Yes." Then Bookie said, "Here's your stuff." Whereupon Bookie raised his hand to pass two brown packages to Hubbard. Sims jumped out of the car and ordered Bookie to stop. The latter ran to the front of Hubbard's car, dropped the packages and raised his hands. Sims then ordered him to walk to the automobile in which he had arrived on the scene. Defendant Petrucci, who was seated in the car, was then placed under arrest. A search of the street resulted in finding the two packages which Bookie had dropped, which were admitted in evidence after having been identified as containing heroin hydrochloride.

Bryson's testimony was corroborative of Sims', except that he did not hear any

of the relevant conversations to which Sims testified.

Defendants objected to the admission of evidence of the telephone conversation and moved that it be excluded, on the ground that it had been procured by interception of a communication in violation of Section 605 of the Communications Act, 47 U.S.C.A. § 605. The overruling of the motion and objections is relied on as error requiring reversal of the judgment.

■ We are convinced, however, that no "interception" within the meaning of that term as used in the Act was disclosed. Since the principle was established in Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314, and 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307, and Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298, requiring exclusion of evidence obtained as a result of interception of messages in violation of Section 605, the question as to when there has been a violation of the Statute has frequently arisen. While courts have differed as to what constitutes an interception, Compare United States v. Polakoff, 2 Cir., 112 F.2d 888, with United States v. Yee Ping Jong, D.C., 26 F. Supp. 69, the weight of judicial authority impels us to conclude that there is no statutory violation when a message is transcribed or overheard with the receiver's consent at the time it reaches him. In discussing this provision of the statute, the Supreme Court said:

"The protection intended and afforded by the statute is of the means of communication and not of the secrecy of the conversation. * * * What is protected is the message itself throughout the course of its transmission by the instrumentality or agency of transmission. * * * As has rightly been held, this word [intercept] indicates the taking or seizure by the way before arrival at the destined place. It does not ordinarily connote the obtaining of what is to be sent before, or at the moment, it leaves the possession of the proposed sender, or after, or at the

moment, it comes into the possession of the intended receiver." Goldman v. United States, 316 U.S. 129, 133, 134, 62 S.Ct. 993, 995, 86 L.Ed. 1322.

The opinion cited by the Court as having "rightly" construed the Act is United States v. Yee Ping Jong, supra.

The relevant cases have been ably analyzed and discussed in recent opinions of two federal courts. Flanders v. United States, 6 Cir., 222 F.2d 163, 165–167; United States v. Pierce, D.C.N.D. Ohio, 124 F.Supp. 264, 266–270. We agree with the opinions of those courts that the Supreme Court's comments in Goldman as to the connotation of the statutory term "intercept" represent approval of the view expressed in Yee Ping Jong and disapproval of the conflicting view expressed in Polakoff.

■ The facts before us are clear. Hubbard had been placed under arrest by the police for possession of narcotics. While the officers were in Hubbard's store, a call came in for him. At the officers' direction, he answered, holding the receiver in such a position that officer Sims could also listen to the incoming conversation. The overheard conversation resulted in defendants' apprehension and subsequent conviction. This was not an interception within the purview of the statutory interdiction and defendants' motion to exclude the evidence so obtained was properly overruled. Goldman v. United States, supra; Flanders v. United States, supra; United States v. Pierce, supra.

A second contention is that the court erred in overruling defendants' motions for the production of an arrest report made by Sims and Bryson to their superior. On cross-examination, Sims testified that such a report had been made on the day following defendants' arrest, and that he had used it to refresh his recollection before testifying at the trial. He stated further that he and Bryson had discussed the report, or some of the statements contained therein, while traveling to court to attend the trial. He said, also, that it contained a statement

that a telephone call was made and that he had listened to the ensuing conversation. He stated that the latter statement was a general one and did not contain a verbatim recital of the conversation, and that a copy of this document was in his files which were in court. Defendants then asked that the report be produced for their examination. The government's objection to this request was sustained.

After the government rested its case, defendants called Sims as a witness and attempted to question him about the report. The court sustained the government's objections, which asserted immateriality of the evidence. Defendants again asked the court to require the document to be produced for their examination. The motion was denied.

■ Defendants challenge only the last mentioned ruling as error. They do not complain that the document was not made available during their cross-examination of Sims, but assert that it was error to overrule their demand that Sims produce the report when called as a defense witness. In this respect they overlook the requisite tests recited in the cases on which they rely, all of which hold concisely that error is committed only when testimony or other evidence which is material and relevant to the issues of the case is excluded. United States v. Chichester Chemical Co., 54 App.D.C. 370, 298 F. 829; Moffatt v. United States, 8 Cir., 232 F. 522. These cases point up clearly the requirement that, when such testimony is challenged by a proper objection, the offering party has the burden of showing in what respect it is relevant and material.

■ Defendants' contention of error in the trial judge's ruling must be examined in the light of all circumstances surrounding their final demand for production. Nothing concerning this report was brought out in the government's direct examination. The fact that such a document existed was elicited in the course of cross-examination. But no proper foundation for the demand for production was laid; there was no showing that anything in the report was contradictory of Sims' testimony as a witness or was otherwise relevant or material to any issue in the case. See Gordon v. United States, 344 U.S. 414, 418–419, 73 S.Ct. 369, 97 L.Ed. 447. When Sims was called as a witness for the defense, and each question regarding the report was met with an objection as to its materiality, it was incumbent on defendants to show in what respect the document was material to any issue. No such showing was made. At best, their position in this respect amounts to nothing more than a hope that the report, if produced, would contain evidence favorable to their cause. Neither the Rules of Criminal Procedure, 18 U.S.C.A., nor principles of justice require a court to permit such a fishing expedition in the course of a trial. The demand for production was properly overruled.

Defendants' final argument for reversal relates to the court's refusal to give a tendered instruction. Officer Sims testified that, as defendants were being taken to the police station after arrest, defendant Petrucci offered the officers "a grand apiece" to forget about the arrest; and that later he raised the offer to five thousand dollars. This testimony was corroborated by Bryson. Defendant Bookie testified that Petrucci told the officers that he was sick and would give them fifteen or twenty dollars to avoid going to the police station. Petrucci was not called as a witness.

Defendants tendered the following instruction which the court refused: "Testimony has been offered by one of the police officers testifying for the Government that one of the defendants, Fred Petrucci, offered to pay money to the police officers to avoid arrest. Another police officer testified that the said Fred Petrucci offered money to the police officers to avoid humiliation and going to court. The Court instructs the jury that neither of the defendants is here charged with the crime of bribery nor with the offer of said money and you are instructed that such evidence is not

to be considered by you as conclusive of the guilt of Fred Petrucci for the crime for which he is on trial. You may, however, consider such evidence with all of the other evidence in the case bearing upon the guilt or innocence of the defendants of the crime charged and for which he is on trial." This ruling is assigned as error.

In Cannon v. United States, 8 Cir., 66 F.2d 13, the court held that it was improper to instruct the jury that evidence of flight, if not explained, raised a strong presumption of the defendant's guilt of the crime charged. The decisions in Hickory v. United States, 160 U.S. 408, 16 S.Ct. 327, 40 L.Ed. 474, Starr v. United States, 164 U.S. 627, 17 S.Ct. 223, 41 L.Ed. 577, and Alberty v. United States, 162 U.S. 499, 16 S.Ct. 864, 40 L.Ed. 1051, are to the same effect. But, it does not follow as defendants contend, that they were entitled to an instruction that the jury was not to consider the evidence of attempted bribery as conclusive of defendant's guilt.

Under the majority rule, evidence of flight or other suspect conduct from which an inference of an intent to avoid arrest or trial may be drawn raises no presumption of guilt, but is merely a circumstance for the jury to consider with all the other evidence bearing on the ultimate question of guilt. Hickory v. United States, supra; Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528; Campbell v. United States, 9 Cir., 221 F. 186; Stewart v. United States, 9 Cir., 211 F. 41; People v. Minchella, 268 Mich. 123, 255 N.W. 735, 93 A.L.R. 805. The jury is the sole judge as to the weight that shall be accorded to the testimony. Allen v. United States, supra; Campbell v. United States, supra. In Campbell, the case went to the jury on an instruction that evidence as to the defendant's flight was to be considered with all other evidence. The judgment of conviction was affirmed over defendant's contention of error in the court's failure " 'to instruct the jury that flight, though proven, is not necessarily any evidence of crime' " thereby excluding " 'the idea of innocent flight.' " 221 F. at page 191. The court held that the trial court did not err, and that the instruction which placed this evidence on an equal footing with all other evidence was fair and proper.

■ Obviously, it is improper for the court to cast suspicion or doubt on the testimony of any particular witness or to intimate that certain testimony is worthy or unworthy of belief, or that it is not conclusive. It follows that an instruction which singles out one established fact in the case and informs the jury that from that fact alone as a matter of law a certain conclusion does not follow, invades the province of the jury. 88 C.J.S., Trial, §§ 276, 340, pp. 740, 908, citing cases; 64 C.J., Trial, § 601, p. 690.

Illustrative is New York Life Insurance Co. v. Kuhlenschmidt, 218 Ind. 404, 33 N.E.2d 340, 135 A.L.R. 397, where the Supreme Court of Indiana said, 218 Ind. at pages 416–418, 33 N.E.2d at page 345:

"Appellee tendered and the court gave the following instruction: 'If you find from the evidence that false statements were made by the insured to questions propounded to him when he applied for the policy of insurance sued on, the same would not avoid the policy unless they related to matters material to the risk and on this issue the court instructs you that the statements by the officers' and employees of the defendant that they would not have accepted the risk or would have charged a higher rate therefor if they had known the true facts *are not conclusive* on this question but the same are to be considered by you with other evidence bearing on this question.'

"Appellant's objection is that this instruction singles out the testimony of certain witnesses and tells the jury that their statements were not conclusive thus bringing 'this particular evidence into disrepute.' * * * The word 'conclusive' is

sometimes used in the sense of 'determinative' but also may mean 'convincing'. The instruction was directed at the testimony of two persons only, designated as 'officers and employees of the defendant.' The jury could have understood the instruction as indicating that those witnesses were not to be credited to the same extent as other witnesses or that their testimony was not convincing. As a matter of fact if the jury chose to believe them their testimony was such as might be 'determinative' of the issue of materiality. * * * We cannot approve an instruction that so easily may be understood as discrediting certain witnesses. The purpose sought to be accomplished could have been achieved by language unobjectionable." (Italics supplied.)

In Atterbury v. Chicago, I. & St. L. Ry. Co., 134 Ill.App. 330, at page 335, the court said: "Appellee's third given instruction is open to the objection that it singles out one established fact in the case and informs the jury that, as a matter of law, a certain conclusion does not necessarily follow therefrom. Such instructions merely mislead and confuse the jury." See also Sangster v. Hatch, 134 Ill.App. 340, at pages 342–343. It is generally recognized that the trial court may properly refuse any instruction which directs the jury as to the strength or weakness of testimony, or as to its weight or sufficiency. 88 C.J.S., Trial, § 285, p. 783, citing cases, including Lynch v. Oregon Lumber Co., 9 Cir., 108 F.2d 283. It is equally improper for the court to minimize or belittle evidence. 88 C.J.S., Trial, § 285, pp. 796–797, citing cases, including Allman v. Malsbury, 224 Ind. 177, 65 N.E.2d 106.

■ On final analysis, then, defendants' arguments do not support their premise. They argue that inasmuch as Hickory, Starr, Alberty and Cannon teach that it is error to instruct the jury that guilt may be presumed from evidence of flight, defendants are entitled to an instruction that "such evidence [of attempted bribery] is not to be considered by you [the jury] as conclusive of the guilt of Fred Petrucci for the crime" charged. We think the instruction was properly refused for the same reason that the converse was held to constitute error in the mentioned cases, i. e., it is peremptory and would, insofar as the proof of bribery is concerned, arrogate to the trial judge the jury's function of weighing the evidence.

■ With the "conclusive proof" phrase deleted, the remainder of the tendered instruction was proper. Cf. Allen v. United States, supra; Campbell v. United States, supra. The government's objection was addressed solely to that phrase; all colloquy as to the instruction related to defendant's insistence that they were entitled to the per-emptory instruction; and, finally, the trial court's ruling thereon rests on that ground. Defendants, having failed to tender a proper charge, may not now be heard to complain that no instruction specifically dealt with the evidence of attempted bribery.

Furthermore, we have reviewed the court's charge and find it eminently fair. The court emphasized and reiterated the presumption of innocence of defendants, the government's burden of proving guilt beyond a reasonable doubt and the jury's duty, as the trier of fact, to consider and weigh all the evidence in reaching its verdict. It seems clear that the jury was advised that the evidence relating to attempted bribery was, as was all other evidence in the case, to be considered on the question of guilt or innocence. If, in addition to those given, any specific instruction relative to the evidence was warranted, defendants are in no position to complain; they did not tender a proper instruction.

We find no error in the record. The judgments are

Affirmed.

SCHNACKENBERG, Circuit Judge (concurring).

Defendants called officer Sims as their own witness, at which time they asked

the court to require government's counsel to produce for their examination Sims' report to his commanding officer. Their motion being denied, they charge that the court's ruling thereon was error. Sims then being their own witness, defendants had no right to impeach him. No other legitimate purpose for their examination of the document has been suggested. Hence, no error was committed by the court in refusing to require its production.