### HENDERSON v. HENDERSON.
### No. 9289.

Circuit Court of Appeals, Ninth Circuit.

Feb. 23, 1940.

864

N. J. Barry, of Reno, Nev., and Lloyd W. Dinkelspiel, of San Francisco, Cal., for appellant.

Thos. J. Salter, of Winnemucca, Nev., for appellee.

George P. Barse, of Washington, D. C., for Preston Delano, Comptroller of the Currency, amicus curiae.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Transfers of secured loans and parts thereof between banks resulted in a claim by one of them to a portion of the proceeds of the security. The court below upheld the claim to the extent of $75,276.76. Review of the judgment to that effect is here sought.

At the times material herein, one Wingfield was president and majority stockholder of each of eleven different banks in Nevada. One Sheehan was vice-president of most of such banks and with Wingfield controlled the operations of such banks. In the group were the First National Bank of Winnemucca, hereafter called the Winnemucca bank, and the Reno National Bank, hereafter called the Reno bank. The Winnemucca bank had opportunities to make loans in excess of the amount legally possible to one borrower, and the practice of transferring the excess of the loan over the legal limit to the Reno bank was followed. The Reno bank would credit the account of the Winnemucca bank upon receipt of notes representing such excess. The Winnemucca bank would endorse the notes "without recourse" on it. Some of the notes, in turn, were transferred by the Reno bank to other banks in the group.

Mortgages were taken to secure the notes, upon the understanding that all notes were thereby secured, irrespective of the number of banks holding portions of the entire indebtedness. The mortgages also covered advances which might thereafter be made to protect the loans, usually for seasonal operating expenses. It had been the usage in the group that the first amounts received from a particular debtor would be used to repay the seasonal advances, and any excess, even though obtained from the security, was then pro-rated among the banks holding portions of the total indebtedness in the proportion that the amount held by each bank bore to the total indebtedness.

Prior to June 30, 1932, a number of secured loans had been divided between the banks, and although some were distinguished by special circumstances, the differences are immaterial in our view of the case.

The Reno bank proposed to borrow money from the Reconstruction Finance Corporation, hereafter called the Corporation. To do so it was necessary to deposit assets as security for the loan. The corporation was unwilling to accept as security only a portion of the divided loans. Accordingly, at the request of Sheehan, the Winnemucca bank on June 30, 1932, assigned the portions of various divided loans, which it held, to the Reno bank, endorsing the notes "without recourse" on it. Thereafter, the Reno bank pledged the loans, which had formerly been divided, with other assets it had, to the Corporation as security for a loan made by it to the Reno Bank. Thereafter, the Winnemucca bank, at the request of Sheehan, made seasonal advances to debtors, a portion of whose secured indebtedness had been held by it prior to the assignment on June 30, 1932.

On July 25, 1932, the Winnemucca bank executed a document entitled "Subordination Agreement". It provided, in general, that the claim of the Winnemucca bank, under loans theretofore or thereafter made, against any security pledged to the Corporation should be secondary to the claim of the Corporation thereto. There were general words in the document susceptible of the interpretation that the Winnemucca bank was waiving its claim to the security entirely, but which when read in connection with the remainder of the document clearly indicate that the intention was to give the Corporation a prior lien on the

security, but as between the banks there was no change in their relations.

On December 9, 1932, the Winnemucca bank and the Reno bank suspended operations, and a receiver was thereafter appointed for each bank.

The Corporation foreclosed the security it held for the loan it had made to the Reno bank, and was fully repaid. The divided loans were not paid in full by foreclosure on the security given for such loans. The Winnemucca bank then asserted that as between the banks there should be an accounting in accordance with the previous usage; that the proceeds of the security should be divided pro-rata between the Winnemucca bank and the Reno bank. This suit was commenced upon that theory, by the receiver of the Winnemucca bank against the receiver of the Reno bank, such receivers being then separate individuals. The trial court filed a written opinion limiting and upholding the claim of the Winnemucca bank. Before findings and judgment were made, the receiver of the Winnemucca bank was also appointed receiver of the Reno bank, and in that capacity was substituted as the defendant. The court below found that the usage, mentioned above, had existed among the banks, and rendered judgment against appellant for $75,276.76, from which this appeal is taken.

Appellant contends that appellee waived any right to the security it had by executing the subordination agreement, but as we have stated, the intent to the contrary is clearly shown in the document.

Appellant also contends that the usage amounts to a "special promise" on behalf of the Reno bank "to answer for the debt, default, or miscarriage of another" and therefore void under Nevada Compiled Laws of 1929, § 1533, because not in writing. We believe that contention is not well taken. There is no promise by the Reno bank to pay the debt of anyone. The substance of the usage is that the collecting bank obtained funds, a part of which belonged, not to the collecting bank, but to other banks. No promise to pay the debts of the original debtors is involved. The effect is analogous to a situation where a trustee or agent collects money, part of which belongs to himself, and part of which belongs to others.

█ Appellant's main contention is that upon assignment of the notes by the Win-

nemucca bank to the Reno bank, and by the latter to the Corporation, the Winnemucca bank then stood in the position of a stranger to the obligation, and could not thereafter make advances which would be secured by a mortgage held by, a third party. While that may be true as a general principle, it does not take into consideration the usage referred to. The usage becames a part of the agreement as much as if reduced to writing by the banks. Usage is particularly pertinent to banks and banking (see 17 C.J. 479, § 42), and we see no reason why it cannot be accepted here. The three cases cited by appellant[1] are not in point.

■ The testimony as to the usage fully sustains the trial court's finding as to its existence, and the testimony was broad enough to cover advances made by the Winnemucca bank even though it held no part of the original indebtedness, so long as such indebtedness originated in such bank. Had there been no pledge of the loans by the Reno bank to the Corporation there would be no question but that the Winnemucca bank would have the right to participate in the proceeds of the collateral. Likewise, had the Reno bank sold the loans and completely parted with its title thereto, the usage would not have aided the Winnemucca bank as against a stranger to the usage, since such usage applied only as between the banks. It is therefore necessary to determine what the effect of the transaction between the Reno bank and the Corporation was.

■ When the Reno bank pledged the loans to the Corporation, it did not part with all title thereto, but retained a "general property" in the loans and the security therefor (Winnemucca State Bank & Trust Co. v. Corbeil, 42 Nev. 378, 383, 384, 178 P. 23; 49 C.J. 922, § 57) even after default by the Reno bank. 49 C.J. 922, § 57. Upon default by the Reno bank, the Corporation might either foreclose and sell the collateral it held, or it might proceed to collect the notes it held as collateral, and apply the proceeds on the obligation of the Reno bank. If the Corporation foreclosed and sold the collateral, then the Winnemucca bank would have no right to participate because the Reno bank would then have parted with all interest in the loans and security therefor. On the oth-

er hand, if the Corporation collected the notes held as security for its loan to the Reno bank, then it was acting for the Reno bank (W. B. & T. Co. v. Corbeil, supra) and the collections it made were owned by the Reno bank, subject to the right of the Corporation to apply them on the indebtedness owing it by such bank. Upon collection, therefore, the usage would require a pro-rata distribution to the Winnemucca bank.

■ Nothing in the record discloses which method was chosen by the Corporation. In the absence of a showing in that respect, no error has been shown, and the judgment must be affirmed. Lynch v. Oregon Lumber Co., 9 Cir., 108 F.2d 283, 285.

Affirmed.

[1] Walker v. Whitmore, 165 Ark. 276, 262 S.W. 678; Savings & L. Soc. v. Burnett, 106 Cal. 514, 39 P. 922; Atkinson v. Foote, 44 Cal.App. 149, 159, 186 P. 831.